## Case No. 16,538.

### UNITED STATES v. TREASURER OF MUSCATINE COUNTY.

[1 Dill. 522;[1] 2 Abb. U. S. 53; 9 Am. Law Reg. (N. S.) 415; 12 Int. Rev. Rec. 56.]

Circuit Court, D. Iowa. 1870.

MUNICIPAL CORPORATIONS — JUDGMENTS — MANDAMUS—MARSHAL AS COMMISSIONER TO COLLECT TAXES—OBLIGATION OF CONTRACTS.

1. Writs of mandamus under the laws of Iowa, are appropriate and proper process to enforce judgments against public corporations; and when issued by the courts of the United States, their execution cannot lawfully be thwarted, or interfered with by the state courts.
[Cited in Rees v. City of Watertown, 19 Wall. (86 U. S.) 118.]

2. If writs of mandamus issued by the federal courts in Iowa, commanding the proper local officers to levy and collect taxes to pay judgments against public corporations are evaded, disobeyed, or cannot be executed, the court has the power to appoint its marshal to execute the writs.
[Cited in Welch v. Ste. Genevieve, Case No. 17,372.]

3. This is a discretionary authority in the court, and the rules or circumstances which will guide the court in exercising it, considered.

4. An act of the Iowa legislature, discriminating specially against taxes levied to pay judgments upon railroad bonds, was *held*, in view of the laws in force when the bonds were issued, to be in contravention of the provision of the constitution prohibiting states from passing laws "impairing the obligation of contracts."
[Cited in Milnor v. Pensacola, Case No. 9,619; U. S. v. Jefferson Co., Id. 15,472; Mount Pleasant v. Beckwith, 100 U. S. 533.]

In the cause above entitled, and in various others of a similar nature, the judgment creditors of sundry counties in this state, who have heretofore had peremptory writs of mandamus issued to the county officers to collect taxes sufficient to pay their judgments, move the court, upon affidavits and verified informations, to appoint the marshal for the district of Iowa to execute said writs and collect the said taxes in the place of the county treasurers.

John N. Rogers, Grant & Smith, and Edmonds & Ransom, for the motion.

Rush Clark, D. C. Cloud, and Mr. Williams, contra.

Before DILLON, Circuit Judge, and LOVE, District Judge.

DILLON, Circuit Judge. Heretofore, judgments have been rendered in this court on what are termed railroad bonds and coupons, against the counties of Lee, Washington, Louisa, Muscatine, Johnson, Iowa, and Poweshiek. To enforce payment, writs of mandamus have at previous terms been ordered to be issued, commanding the proper county officers to levy and collect taxes sufficient to pay those judgments. At a term of this court held one year ago, it was shown that the

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

county officers of most, if not all of these counties, had either neglected or refused to levy and collect the taxes required by the mandates of this court. On being attached for contempt they gave as a reason for their non-action, that the bonds upon which the judgments in this court had been rendered were, in the opinion of the state courts, unconstitutional, and that they had been enjoined by the state courts (in proceedings to which the judgment creditors were not parties) from making the levies which this court had commanded.

Following the express decision of the supreme court of the United States on the precise point, this court (Mr. Justice MILLER and Mr. District Judge LOVE both being present and concurring) then held that the state courts had no authority to enjoin or otherwise interfere with the execution of the process of this court; that injunctions issued from the state courts for that purpose were unauthorized, and in law afforded no protection to the county officers for their neglect or refusal to obey the process of this court. But under the circumstances the officers were discharged from actual arrest under the attachments for contempt, on the payment of costs, and on their promise to return home and levy the taxes required by the writs of mandamus. The returns subsequently made to the court show that they did, as promised, make orders levying the taxes; but in respect to some counties, particularly those of Lee, Johnson, and Muscatine, there is a showing made at this term that the taxes thus levied have not to any considerable extent been collected.

It has been made to appear to the court that in Lee county the efforts of the county treasurer to make the taxes have been practically defeated, and the same remain almost wholly uncollected. This has been brought about in part where personal property has been distrained by the county collector, by replevin suits commenced against him by taxpayers in the state courts. It is also shown that there are combinations made to prevent the attendance of bidders at such tax sales, and to deter them from bidding; and in one instance that an agent of one of the judgment creditors who attended at advertised sales of property was prevented by threats from bidding, and forced to leave by apprehensions of personal danger.

It also appears that since the decision of the supreme court of the United States, and also since the decision of the supreme court of the state to the effect that the process, or officers of the federal courts cannot be enjoined or interfered with by state courts, that one or more of the state district judges have issued injunctions against the collectors of Muscatine and Lee counties, undertaking to prohibit them from collecting the taxes which this court has ordered to be made; and that such injunctions have been obeyed, and the collections practically prevented.

The county collector of Johnson county, in answer to an information filed against him, admits that he has not collected more than about one-fifth of the levy; that he is advised and believes that combinations have been formed to prevent the compulsory collection of such taxes; that he finds it impossible, by reason of such combinations to find responsible deputies to assist in making collections, and in view of these facts he "asks the appointment of the marshal of this court to collect the said tax, or proceed under him (the county collector) to make such collection," and for direction as to the interest and penalties he shall collect. A sworn statement of a similar character has been made at this term by the collector of the county of Muscatine, who also asks both the direction and aid of this court. Because the taxes have not been in fact collected in various counties in obedience to the mandates of this court, and because it is claimed by reason of the facts before stated, and others not recited, that it is impracticable for the county collectors to comply with the writs of mandamus which have been issued, the judgment creditors of the counties above mentioned have applied to the court for an order appointing the marshal to execute the writs of mandamus and make collections of the taxes. This is the question now before the court. That this court has the power to make such appointment, and that if the county officers either will not, or cannot, themselves collect the taxes, it is the duty of the court to appoint its own officers to execute its process, are points not longer open to controversy, because they have been precisely and definitely settled by the supreme court of the nation. This is a power of a very delicate nature, and one which, although affirmed by the highest tribunal in the land to exist, we would not feel inclined to exercise except in case of necessity. But when the necessity exists it is our duty, one from which there is no escape, to exercise the power. When does the necessity exist? Obviously when the county officers will not, or in consequence of public excitement, combinations, or suits in state courts, cannot execute the commands of the writs of this court to collect the taxes.

When a court issues its process it is bound to see that its lawful commands are neither disobeyed nor evaded. That these writs of mandamus are lawful commands, and that the creditors of the counties are entitled to these writs, and also entitled to have them executed and obeyed, are no longer questions open to controversy, since they have been decided not once simply, but time and time again by the supreme court of the United States. They are settled, and any inquiry whether the supreme court of the United States ought to have settled them otherwise, is fruitless, and without any practical value. But this is not all that is settled. The supreme court of the United States has also decided that writs of mandamus are appropriate

and proper process to enforce judgments against public corporations in this state; that the federal courts have the power, and that it is their duty to issue such writs; that they are in the nature of writs of execution, and that state courts have no more right to interfere with their execution than they have to interfere with the marshal when executing an ordinary fieri facias. This court cannot question the correctness of their decisions; and they are equally binding upon the state courts, because the decisions of the supreme court of the United States, as to the extent of jurisdiction of the federal courts, and as to the validity and conclusiveness of their judgments, and as to what process may be resorted to to enforce them, and how such process shall be executed, bind congress, bind all the federal courts, and bind also state legislatures and state judges.

It so happens that every judge who sits in this court is a citizen of this state; and none of them have failed to express and manifest their sympathy, in all proper ways, with those counties and cities which have, unfortunately, become so heavily indebted. It would be no act of kindness to the people of these counties and cities for this court to disregard the decisions of the supreme court or refuse to carry out the principles which it has decided, for in the end, and before long, we too would be compelled to obey its mandates. It is the superior tribunal, and we have no choice but to obey and carry out its decisions. Nor would it be an act of kindness to these cities and counties to pursue any course or to say or do anything which would encourage the hope that any change of views on the part of the supreme court was possible, or that by any litigation there remained any chance whatever to defeat the right of the bondholders to recover and collect their judgments. After a careful study of the decisions referred to, and of the grounds on which they are placed, we feel bound to say, and think it important that the people should understand, that all hope of escape from them by means of further litigation, either in the federal or state courts, is without any sort of foundation, is wholly illusory, and will deceive whoever relies upon it. So far as the state courts are concerned, they are, for the reasons before stated, utterly powerless to afford any relief, since they have no right whatever to interfere with the federal courts or their process or officers. As respects the counties of Lee, Johnson, and Muscatine, it is the opinion of the court upon the showing made to it, that it is its duty to appoint the marshal to execute the writs of mandamus; but in the two counties last named the marshal will not proceed to act unless it shall be shown to the court or some one of its judges that the county officer is either disobeying the writ, or failing duly to cause the same to be executed. In Lee county the showing made to the court is such as to entitle the relators to have the marshal appointed and directed to act at once.

It is proper to add, that his appointment will be rescinded whenever it is shown that the county officers are willing and able themselves to execute the writs of mandamus. It should be understood that the marshal is the officer of this court; that he is not subject in the execution of his official duties to the control of any proceeding or process of the state courts; that any interference with him is unauthorized; that any resistance to him is an offense against the laws of the United States, and punishable as such in the courts of the United States, and that it is the duty of the president to support him with all the power necessary to enable him to execute the process and orders of this court. The people of Iowa are law abiding, and with this plain statement of what the law is, the members of this court gladly avail themselves of this occasion to declare that it is their firm conviction that the law will be respected and obeyed.

It only remains to add that the act of the Iowa legislature of last winter, discriminating specially against the taxes levied to pay judgments upon railroad bonds, is in contravention of the provision of the national constitution prohibiting the states from passing laws "impairing the obligation of contracts."

This is plain upon a comparison of that act with the laws in force under which the bonds were issued (Code 1851, §§ 116–124; Revision, 1800, §§ 252, 260), especially when made in the light of the decisions of the supreme court of the United States, expounding the constitutional provision above mentioned. Van Hoffman v. City of Quincy, 4 Wall. [71 U. S.] 535; Bronson v. Kinzie, 1 How. [42 U. S.] 316; Butz v. City of Muscatine, 8 Wall. [75 U. S.] 575; Lee Co. v. Rogers, 7 Wall. [74 U. S.] 175; Farman v. Nichol, 8 Wall. [75 U. S.] 44; Woodruff v. Trapnall, 10 How. [51 U. S.] 206.

Ordered accordingly.

NOTE. In Supervisors v. Rogers, 7 Wall. [74 U. S.] 175, the supreme court affirmed the power of the circuit court, to appoint a commissioner to levy and collect taxes to satisfy a judgment rendered therein against a public corporation. The decision rests upon the Iowa statute (Revision, § 3770), and the court did not consider whether the authority could be otherwise exercised. See Rusch v. Des Moines County [Case No. 12,142]; Welch v. The Genevieve [Id. 17,372].

NOTE [from 2 Abb. U. S. 53]. Chapter 54 of the Iowa Session Acts of 1870 provides for the funding of county indebtedness. It declares that the supervisors of any county liable for an outstanding indebtedness exceeding five thousand dollars, may fund the same, and issue bonds of the county therefor. These bonds are salable by the county treasurer, at par, and the proceeds applicable to the county liabilities. Provision is made for the levy of a tax for the payment of interest, and ultimate redemption of the bonds. Section 6 of the act then declares that the preceding provisions "shall not be construed to embrace the indebtedness of any county arising from bonds issued to aid in the construction of any railroad."