## MOUNT PLEASANT *v.* BECKWITH.

1. Where no constitutional restriction is imposed, the corporate existence and powers of counties, cities, and towns are subject to the legislative control of the State creating them.

2. Where a municipal corporation is legislated out of existence and its territory annexed to other corporations, the latter, unless the legislature otherwise provides, become entitled to all its property and immunities, and severally liable for a proportionate share of all its then subsisting legal debts, and vested with its power to raise revenue wherewith to pay them by levying taxes upon the property transferred and the persons residing thereon.

3. The remedy of the creditors of the extinguished corporation is in equity against the corporations succeeding to its property and powers.

APPEAL from the Circuit Court of the United States for the Eastern District of Wisconsin.

In 1873, Charles Beckwith filed his bill in the court below, against the town of Mount Pleasant, the town of Caledonia, and the city of Racine, in Racine County, Wisconsin, to enforce the payment of certain bonds issued in the year 1853, by the town of Racine in said county, in payment of stock for which it subscribed in the Racine, Janesville, and Mississippi Railroad Company.

The legislature of the Territory of Wisconsin, by an act approved Jan. 2, 1838, among other things, established the towns of Racine and Mount Pleasant, and defined their boundaries; and by an act approved Feb. 7, 1842, created and established the town of Caledonia, and defined its boundaries and those of Racine and Mount Pleasant.

The legislature of the State of Wisconsin, by an act approved Aug. 8, 1848, incorporated the city of Racine and defined its boundaries.

By an act approved April 2, 1853, the town of Racine was authorized and empowered to subscribe to the capital stock of

the Racine, Janesville, and Mississippi Railroad Company, to the amount of $50,000, and to pay therefor in the bonds of the town, payable within twenty years, in the manner prescribed by said act; and on or about Dec. 6, 1853, it subscribed for and took $50,000 dollars of said stock, and issued its bonds accordingly.

In 1856, the legislature changed the boundaries of the towns of Mount Pleasant and Racine, and, in 1857, changed and defined those of the towns of Racine, Caledonia, and Mount Pleasant.

The board of supervisors of Racine County, Dec. 2, 1859, changed the name of the town of Racine to Orwell.

The legislature, by an act approved March 30, 1860, vacated Orwell, and attached its territory to Caledonia and Mount Pleasant, and, by an act approved March 17, 1871, took from the latter a portion of such territory and added it to the city of Racine.

On March 30, 1860, the value of property of individuals within the jurisdiction of the town of Orwell was : —

Real estate . . . . . . . . . . . $696,024.05
Personal property . . . . . . . . .   37,925.00

There came within the jurisdiction of the town of Caledonia of this property : —

Real estate of the value of . . . . . $298,112.00
Personal property of the value of . . .   15,167.00

And within the jurisdiction of Mount Pleasant : —

Real estate of the value of . . . . . $397,912.05
Personal property of the value of . . . .  22,757.00

In 1874, the value of property in the town of Caledonia, which was on that part of its territory attached in 1860, was : —

Real estate . . . . . . . . . . . $326,533.41
Personal property . . . . . . . . .   34,893.00

And the value of property within Mount Pleasant on that part of its territory attached in 1860 from Orwell was : —

Real estate. . . . . . . . . . . . $377,610.00
Personal property . . . . . . . . .   35,470.00

And within the limits of the city of Racine on that part of its territory attached in 1871 : —

| | |
|---|---|
| Real estate. . . . . . . . . . . | $125,528.00 |
| Personal property . . . . . . . . | 9,385.00 |

Neither Mount Pleasant nor Caledonia by any corporate act moved the legislature of Wisconsin for the passage of any of the laws changing any of the territorial boundaries above specified or referred to.

The defendants filed separate general demurrers to the bill, which were overruled. They then answered.

There was evidence tending to show that the stock of the Racine, Janesville, and Mississippi Railroad Company was worth from fifty to seventy-five per cent of its par value from 1853 to 1856, the date of the last transaction in stock proven, and that no records of the town of Orwell ever came to the possession of either the town of Mount Pleasant or the town of Caledonia.

Upon hearing, the court below, April 18, 1876, entered the following decree : —

" This cause came on to be heard on the twelfth day of May, A.D. 1875, upon the pleadings and proofs reported by the master, and, having been argued by counsel, the court took the same under advisement; and a further computation of the amount due to this date upon the bonds described in the complainant's bill and exhibited in the proofs having been directed and made and filed by the master, bearing date the eighteenth day of April, 1876; and it satisfactorily appearing to the court that the town of Racine, a municipal corporation in the county of Racine, in said Eastern District of Wisconsin, and then having within its boundaries and municipal jurisdiction the territorial area described in the complainant's bill, — on or about the sixth day of December, 1853, made, executed, and delivered the bonds described in his bill upon the consideration, under the authority, and in the manner in said bill set forth ; that the said town of Racine continued in existence as such municipal corporation, and by the same name and with the changes in its territorial boundaries set forth in the complainant's bill, until on or about the second day of November,

1859, when the county board of supervisors of Racine County, within which county said town of Racine was located, by a resolution of said board, changed the name of said town from ' The Town of Racine ' to ' The Town of Orwell,' and that the township and municipal corporation theretofore known as the town of Racine remained in existence in and by the name of the town of Orwell, and with the same territorial limits which the town of Racine had prior to such change of name, until on or about the thirtieth day of March, 1860, when the legislature of the State of Wisconsin, by an act approved March 30, 1860, vacated and extinguished the corporation and body politic known as the town of Orwell, in the county of Racine, and declared that said corporation should thereafter have no existence as a body politic and corporate.   That in and by the same act of the legislature of said State, the whole territory of said town of Orwell, formerly known as the town of Racine, was attached to the defendants, the town of Mount Pleasant and the town of Caledonia, in the proportions and by the boundary lines in said act named, and that no provision was made in or by said act for the payment of the corporate debts of said township and body politic theretofore known by the names of the town of Racine and the town of Orwell.   And it further appearing to the court that, on or about the seventeenth day of March, 1871, by an act of the legislature of Wisconsin, approved March 17, and published March 18, 1871, a portion of the lands and territory which had been within the town of Orwell at the time it was vacated, and which, by the act vacating Orwell, was attached to Mount Pleasant, was detached from the town of Mount Pleasant and attached to the defendant, the city of Racine, and in and by said act it was provided that the defendant, the city of Racine, should assume and pay so much of the municipal indebtedness of the former town of Racine, if any, as the lands described in the addition to said city might be or become legally chargeable with and liable to pay.

" And it further appearing that the complainant, at the time of filing his said bill, was and now is the owner in good faith and for value of the bonds in the bill mentioned, and upon which there is due at this date the sum of $23,080.20.

"Now, at the January Term of this court, to wit, on the eighteenth day of April, 1876, the court being sufficiently advised, and being of the opinion that the municipal indebtedness of said town of Racine, otherwise known as the town of Orwell, was not extinguished by said act of the legislature, vacating and disorganizing said township, and distributing its territory to other townships and municipal corporations, and that an equitable liability for such indebtedness accrued against the defendants, to which such territory was distributed, in the proportion which the taxable property received by each and the valuation thereof bore to the whole taxable property and the whole debt of such vacated town.

"Now, therefore, it is considered, adjudged, and decreed that the master's report of the amount due on the bonds set forth in complainant's bill, and of the respective proportions and valuations of the taxable property received by each of the defendants from said town of Orwell, or which belonged to said town immediately prior to the vacation thereof, be and the same is adopted, ratified, and confirmed.

"And it is further adjudged and decreed that the complainant, Charles Beckwith, do have and recover of and from the defendants, the town of Mount Pleasant, the town of Caledonia, and the city of Racine, the sum of $23,080.20, hereby adjudged due to him from them for principal and interest upon the bonds described in the complainant's bill, and which sum it is adjudged the complainant have and recover from the defendants severally, and that the defendants severally pay the same in the proportions and respective amounts following, to wit: —

"That the complainant, Charles Beckwith, have and recover of and from the defendant, the town of Caledonia, the sum of $9,281.50, and interest thereon from this date; and also the further sum of $58.37, being one-third of complainant's costs and disbursements of the action, as taxed, and hereby adjudged to the complainant.

"That the complainant, Charles Beckwith, have and recover of and from the defendant, the town of Mount Pleasant, the sum of $10,742.70, and interest from this date; and also the further sum of $58.37, being one-third of complainant's costs, as taxed.

"And that the complainant, Charles Beckwith, have and recover of and from the defendant, the city of Racine, the sum of $3,056, and interest thereon from this date; and also the further sum of $58.36, being one-third of complainant's costs, taxed and adjudged to him as aforesaid.

"And it is further adjudged that the complainant have execution against said defendants severally, to collect said several sums decreed to be paid by each, in the manner provided by law."

From this decree the town of Mount Pleasant and the town of Caledonia appealed to this court.

*Mr. L. S. Dixon* and *Mr. John T. Fish* for the appellants.

The court below erred, —

1. In holding the appellants liable to pay the debt of the town of Racine (or Orwell), incurred in the purchase of stock in a railroad company, or that such debt became that of the appellants, to be enforced against them upon any ground or in any form of proceeding. *Hampshire* v. *Franklin*, 16 Mass. 76; *Barkley* v. *Levee Commissioners*, 1 Woods, 254; *Girard* v. *Philadelphia*, 7 Wall. 1; *Atkins* v. *Randolph*, 31 Vt. 226; *Laramie County* v. *Albany County et al.*, 92 U. S. 307; *Town of Depere* v. *Bellevue*, 31 Wis. 120; *Milwaukee* v. *Milwaukee*, 12 id. 102; *Hasbruck* v. *Milwaukee*, 13 id. 37–43; *Mills* v. *Charton*, 29 id. 413; *State ex rel. McCurdy* v. *Tappan, Town Clerk*, id. 664; *People* v. *Batchellor*, 53 N. Y. 128; *Horton* v. *Town of Thompson*, 71 id. 513; *People* v. *Mayor*, 51 Ill. 17; *St. Louis* v. *Russell*, 9 Mo. 503; 1 Dillon, Municipal Corporations, c. 4, sect. 43; Cooley, Const. Lim., marginal p. 231 (4th ed. 284).

2. In holding that the property of individuals within the jurisdiction of the town of Racine (or Orwell) was the primary fund upon which the complainant had the right to rely for the payment of his debt; that the transfer of such property to the jurisdiction of the appellants transferred to them the liability to pay the claims of creditors of that town, and that such liability was that of individual debtors and not that of trustees. *Barkley* v. *Levee Commissioners et al.*, 93 U. S. 258; *Rees* v. *City of Watertown*, 19 Wall. 107; *Heine* v. *The Levee Commissioners*, id. 655.

3. In holding that the power of taxation conferred upon the town of Racine by act of 1853 was by the act of 1860 transferred to the appellants, to be exercised by them severally upon all the taxable property within their jurisdiction. *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Mumma* v. *The Potomac Company*, 8 Pet. 281; *Railroad Company* v. *Maine*, 96 U. S. 499; *Railroad Company* v. *State of Georgia*, 98 id. 359; *Miller* v. *The State*, 15 Wall. 478; *Attorney-General* v. *Railroad Companies*, 35 Wis. 425; *Barkley* v. *Levee Commissioners*, 1 Woods, 254; s. c. 93 U. S. 258; *Broughton* v. *Pensacola*, id. 266; *Milner's Administrators* v. *City of Pensacola*, 2 Woods, 632; *Rees* v. *Watertown, supra; Heine* v. *The Levee Commissioners, supra;* 1 Dillon, Municipal Corporations, sect. 116, and cases cited in note.

4. In holding that it had jurisdiction in equity, or that the appellants were in equity and good conscience liable to pay the complainant's claim against that town. *Heine* v. *The Levee Commissioners, supra.*

*Mr. William P. Lynde, contra.*

Mr. Justice Clifford delivered the opinion of the court.

Explicit authority from the legislature was given to the supervisors of the town of Racine to subscribe for the stock of the railroad company mentioned in the act conferring the power, to an amount not exceeding $50,000, provided a majority of the legal voters of the municipality, at a meeting of the town duly called and held for the purpose, shall vote in favor of making the proposed subscription. Sess. Laws Wis. (1853) p. 11.

Pursuant to that authority, the proper officers of the town, on the 6th of December, 1853, subscribed for the capital stock of the railroad company to the amount of $50,000, and issued one hundred bonds of the corporation, each in the sum of $500, in payment of the subscription for the stock, the bonds being made payable in twenty years from date, with coupons attached for annual interest at the rate of seven per cent. Twenty of those bonds with their coupons are now held by the complainant, numbered from seventy to eighty-nine, inclusive, and of which he became the lawful holder within one month subse-

quent to their date, — all of which, as he alleges, remain wholly unpaid, principal and interest.

Various facts and circumstances are alleged in the bill of complaint of an equitable nature, and which the complainant insists are of a character to show that he has no remedy at law, and which tend strongly to show that he is entitled to relief in equity.   Appended to those several allegations is the prayer of the complainant, that the three respondents may answer the matters charged, and that the court will ascertain the respective liabilities of the respondents to the complainant, and decree the amount due to him from each of the respondent municipalities, and for general relief.

Service was made, and the respective respondents appeared and separately demurred to the bill of complaint.   Hearing was had, and the court overruled the several demurrers and directed that the respondents should answer the matters charged in the bill of complaint by a given day.   Separate answers were accordingly filed by the respective respondents, no objection being made that they were not filed in time.

Sufficient appears to show that on the 2d of January, 1838, the town of Racine and the town of Mount Pleasant were by the same act created municipal corporations, with boundaries as set forth in the bill of complaint.   Private Laws Wis. (1838) 168.

Four years later, the town of Caledonia was incorporated, her territory being taken from the two towns before mentioned, without any provision being made that the new town should bear any portion of the indebtedness of either of the old towns. Id. (1842) 10.

Both parties concur in these propositions, and it appears that the city of Racine, which is a distinct municipality from the town by the same name, was incorporated by the act of the 8th of August, 1848, with boundaries as correctly set forth in the transcript.   Id. (1848) 80.

Subsequent changes, if any, made in the boundaries of these municipalities, not herein made the subject of comment, are regarded as immaterial in the present investigation.

Additional territory was subsequently taken from the town of Racine and was annexed to the city of Racine, and by a still

later act another fraction of her territory was annexed to the town of Mount Pleasant, neither act containing any regulations as to existing indebtedness.   Id. (1856) 148–416.

Prior to that, to wit, on the 6th of March in the same year, the legislature of the State, by an act of that date, annexed a much larger tract, taken from the towns of Racine and Mount Pleasant, to the city of Racine, as described in the record; but the Supreme Court of the State decided that a certain feature of the act was unconstitutional and void.   *Slauson* v. *The City of Racine*, 13 Wis. 398.

In consequence of that decision, the towns from which the territory annexed was taken continued to exercise jurisdiction over it for the period of fifteen years longer, until a portion of the same territory then constituting a part of the town of Mount Pleasant was again annexed to the city of Racine, on the condition that the city " shall assume and pay so much of the municipal indebtedness of the town, as the lands described in the first section of that act may be or become legally chargeable with and liable to pay."   Private Laws Wis. (1871) 723.

Throughout these several changes, except the last, the annexation in every instance was made without any regulation that the town to which the territory was annexed should pay any portion of the indebtedness of the town from which the territory annexed was taken.   Still not satisfied, the legislature, by the act of the 23d of February, 1857, rearranged the boundaries of each of the three towns, as therein is fully set forth and described.   Id. (1857) 103.

Two years later, the county supervisors changed the name of the town of Racine to Orwell; but the prior name will be used throughout in this opinion, as less likely to produce confusion in the statement of facts.   From the time the legislature rearranged the boundaries of the three towns they remained without alteration until the legislature, March 30, 1860, by a public act, vacated and extinguished the corporation and body politic known as the town of Racine, then called Orwell, and enacted that thereafter it should have no existence as a body politic and corporate.   Sess. Laws Wis. (1860) p. 218.

Sect. 2 of the act also provided that all that part of the terri-

tory of the town lying north of the described line should be annexed to and hereafter form a part of the town of Caledonia, and that all that part of the territory lying south of that line should become and continue to be a part of Mount Pleasant.

Each of the respondent towns refer in their answer to the legislation of the State in respect to their incorporation and boundaries, which need not be reproduced, as they are accurately set forth in the preceding statement.

Two of the respondents, to wit, the town of Mount Pleasant and the town of Caledonia, deny in their answers that any statute of the State has ever been passed which would authorize the municipal authorities of those towns to levy and collect a tax to pay either the principal or interest of the bonds described in the bill of complaint, and allege that the corporate authorities of those towns have never assumed or undertaken any trust or duty in the premises, or have ever, in any way, recognized the acts of the town which issued the bonds or the validity of the same. Nor does the answer of the other respondent, to wit, the city of Racine, differ very materially from those filed by the two towns first named, except that the pleader avers that the city was only made liable for such portion of the indebtedness of the old town as is described in the act enlarging the limits of the respondent city, and pleads as a separate defence that the complainant has an adequate remedy at law.

Replications were filed by the complainant, and the parties entered into a stipulation that the proofs should be taken by the master, and that they might be read and used at the final hearing as the evidence in the case, subject to legal objection. Proofs were accordingly taken by the master, and he reported the depositions of the witnesses examined, with an agreed statement of facts. Arguments of counsel followed, and the Circuit Court entered a decree in favor of the complainant against each respondent.

Two of the towns, to wit, Mount Pleasant and Caledonia, appealed to this court, and assign for error the following causes: 1. That the Circuit Court erred in holding that the appellants are liable to pay the debt of the town of Racine incurred in the purchase of stock in the aforesaid railroad company, or that the debt of that town became the debt of the appel-

lants, to be enforced against them in any form of proceeding. 2. That the Circuit Court erred in holding that the property of the individuals within the jurisdiction of that town constituted the primary fund to which the complainant had the right to look for the payment of his debt, and that the transfer of their property to the jurisdiction of the appellants rendered them liable to pay the debts due to the creditors of the town whose powers and jurisdiction terminated by the transfer. 3. That the Circuit Court erred in holding that the power of taxation previously vested in the town which issued the bonds in question was, by the act annexing its territory to the appellant towns, transferred to the appellants to be severally exercised by them upon all the taxable property within their respective jurisdictions. 4. That the Circuit Court erred in holding that it had jurisdiction in equity of the case, or that the appellants are in equity and good conscience liable to pay the claim of the complainant against the town whose territory was annexed to the appellant corporations.

Counties, cities, and towns are municipal corporations created by the authority of the legislature, and they derive all their powers from the source of their creation, except where the Constitution of the State otherwise provides. They have no inherent jurisdiction to make laws or to adopt governmental regulations, nor can they exercise any other powers in that regard than such as are expressly or impliedly derived from their charters or other statutes of the State.

Corporations of the kind are composed of all the inhabitants of the territory included within the political organization, each individual being entitled to participate in its proceedings ; but the powers of the organization may be modified or taken away at the mere will of the legislature, according to its own views of public convenience, and without any necessity for the consent of those composing the body politic. Corporate rights and privileges are usually possessed by such municipalities ; and it is equally true that they are subject to certain legal obligations and duties, which may be increased or diminished at the pleasure of the legislature, from which all their powers are derived.

Institutions of the kind, whether called cities, towns, or

counties, are the auxiliaries of the State in the important business of municipal rule; but they cannot have the least pretension to sustain their privileges or their existence upon any thing like a contract between themselves and the legislature of the State, because there is not and cannot be any reciprocity of stipulation between the parties, and for the further reason that their objects and duties are utterly incompatible with every thing partaking of the nature of compact.

Instead of that, the constant practice is to divide large municipalities and to consolidate small ones, or set off portions of territory from one and annex it to another, to meet the wishes of the residents or to promote the public interests as understood by the legislature, — it being everywhere understood that the legislature possesses the power to make such alterations and to apportion the common property and burdens as to them may seem just and equitable.

Alterations of the kind are often required to promote the public interests or the convenience and necessities of the inhabitants; and the public history shows that it has been the constant usage in the States to enlarge or diminish the power of towns, to divide their territory by set-off and annexation, and to make new towns whenever the legislature deems it just and proper that such a change should be made. Old towns may be divided and new ones incorporated out of parts of the territory of those previously organized; and in enacting such regulations the legislature may apportion the common property and the common burdens, and may, as between the parties in interest, settle all the terms and conditions of the division of their territory, or the alteration of the boundaries, as fixed by any prior law.

State legislation may regulate the subject; but if the legislature omits to do so, the presumption, as between the parties, is that they did not consider that any regulation was necessary. Where none is made, in case of division the old corporation owns all the public property within her new limits, and is responsible for all the debts of the corporation contracted before the act of separation was passed. Debts previously contracted must be paid entirely by the old corporation, nor has the new municipality any claim to any portion of the pub-

lic property, except what falls within her boundaries, and to that the old corporation has no claim whatever. *Laramie County* v. *Albany County*, 92 U. S. 307; *Bristol* v. *New Chester*, 3 N. H. 521.

Apply these principles to the admitted facts of the case, and it is clear that every one of the described changes made in the limits and boundaries of the respondent municipalities become wholly immaterial in this investigation, except the last two, as hereafter more fully explained.

Before the passage of those two acts, the claim of the complainant against the town of Racine was, beyond all question, valid and collectible. Nobody controverts that proposition, and it is clear that no defence to the action could have been sustained for a moment. By the act of March 30, 1860, the legislature of the State vacated and extinguished the corporation and body politic formerly known as Racine, then called Orwell, and annexed the whole area of the territory included in the municipality to the two adjacent towns of Mount Pleasant and Caledonia, in the proportions and by the boundary lines described in the second section of the legislative act. Had legislation stopped there, it is clear that the city of Racine would not have been liable for any portion of the debt of the extinguished municipal corporation; but it did not stop there, as appears by what follows.

Prior to the passage of that act, the old town of Racine was the sole obligor in the bonds held by the complainant; and there certainly is nothing in the provisions of that act which tends in the least degree to create any liability on the part of any other municipality for the indebtedness of that town, except the towns of Mount Pleasant and Caledonia. Nothing had previously occurred to create any liability on the part of the city of Racine to pay any proportion of the debts of the old town of Racine, which issued the bonds described in the bill of complaint.

Until the passage of the act of the 17th of March, 1871, the rights of all parties remained unchanged. By that act a portion of the territory formerly belonging to the old town of Racine was set off from the town of Mount Pleasant and was annexed to the city of Racine. Appended to that act

and a part of it, was the provision that the city to which the described territory was annexed " shall assume and pay so much of the indebtedness of the town of Racine as the lands described in the first section of the act may be or become legally chargeable with and liable to pay." Private Laws Wis. (1871) 723.

Enough appears in that provision of direct legislation to show that the city of Racine was thereby made liable for the debts of the extinguished town of Racine in the proportion therein described; and the clear inference from the provision is that the town of Mount Pleasant, prior to the passage of that act, was liable for the debts of that old municipality in proportion to the whole extent of the territory annexed to her by the prior act which extinguished the old municipal corporation. None, it is presumed, will deny the liability of the city of Racine for those debts in the proportion described in the act creating the liability, and hence it is that the corporate authorities of the city acquiesced in the decree of the Circuit Court without appeal.

Parties who do not appeal from the final decree of the Circuit Court cannot be heard in opposition to the same when the case is regularly brought here by other proper parties. They may be heard in support of the decree and in opposition to every assignment of error, but they cannot be heard to show that the decree below was erroneous. *The Stephen Morgan,* 94 U. S. 599.

Concede that, and it follows that the only question open in the case for examination is whether the other two respondent municipal corporations are liable to any extent for the debts of the extinguished municipality, portions of whose territory were transferred by the legislature into their respective jurisdictions. We say, liable to any extent, because the question of amount was submitted to the master, and the record shows that neither of the appellants excepted to the master's report. *Gordon* v. *Lewis,* 2 Sum. 143; *McMicken* v. *Perin,* 18 How. 507. Nor do either of the assignments of error allege that the master committed any error in that regard. *Brockett* v. *Brockett,* 3 id. 691.

Viewed in that light, as the case should be, it is clear that

if the appellants are liable at all they are liable for the respective amounts specified in the decree. *Harding* v. *Handy*, 11 Wheat. 103 ; *Story* v. *Livingston*, 13 Pet. 359.

Where one town is by a legislative act merged in two others, it would doubtless be competent for the legislature to regulate the rights, duties, and obligations of the two towns whose limits are thus enlarged ; but if that is not done, that it must follow that the two towns succeed to all the public property and immunities of the extinguished municipality. *Morgan* v. *Beloit, City and Town*, 7 Wall. 613, 617.

It is not the case where the legislature creates a new town out of a part of the territory of an old one, without making provision for the payment of the debts antecedently contracted, as in that case it is settled law that the old corporation retains all the public property not included within the limits of the new municipality, and is liable for all the debts contracted by her before the act of separation was passed. *Town of Depere and Others* v. *Town of Bellevue and Others*, 31 Wis. 120, 125.

Instead of that, it is the case where the charter of one corporation is vacated and rendered null, the whole of its territory being annexed to two others. In such a case, if no legislative arrangements are made, the effect of the annulment and annexation will be that the two enlarged corporations will be entitled to all the public property and immunities of the one that ceases to exist, and that they will become liable for all the legal debts contracted by her prior to the time when the annexation is carried into operation.

Speaking to the same point, the Supreme Court of Missouri held that where one corporation goes entirely out of existence by being annexed to or merged in another, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the subsisting corporation will be entitled to all the property and be answerable for all the liabilities. *Thompson* v. *Abbott*, 61 Mo. 176, 177.

Grant that, and it follows that when the corporation first named ceases to exist there is then no power left to control in its behalf any of its funds, or to pay off any of its indebtedness. Its property passes into the hands of its successor, and when the benefits are taken the burdens are assumed, the rule being

that the successor who takes the benefits must take the same
*cum onere*, and that the successor town is thereby estopped to
deny that she is liable to respond for the attendant burdens.
*Swain* v. *Seamens*, 9 Wall. 254, 274; *Pickard* v. *Sears*, 6 Ad.
& Ell. 474.

Powers of a defined character are usually granted to a mu-
nicipal corporation, but that does not prevent the legislature
from exercising unlimited control over their charters.    It still
has authority to amend their charters, enlarge or diminish their
powers, extend or limit their boundaries, consolidate two or
more into one, overrule their legislative action whenever it is ·
deemed unwise, impolitic, or unjust, and even abolish them
altogether, in the legislative discretion, and substitute in their
place those which are different.    Cooley, Const. Lim. (4th ed.)
232.

Municipal corporations, says Mr. Justice Field, so far as they
are invested with subordinate legislative powers for local pur-
poses, are mere instrumentalities of the State for the convenient
administration of their affairs; but when authorized to take
stock in a railroad company, and issue their obligations in
payment of the stock, they are to that extent to be deemed
private corporations, and their obligations are secured by all
the guaranties which protect the engagements of private indi-
viduals.    *Broughton* v. *Pensacola*, 93 U. S. 266, 269.

Modifications of their boundaries may be made, or their
names may be changed, or one may be merged in another, or
it may be divided and the moities of their territory may be
annexed to others; but in all these cases, if the extinguished
municipality owes outstanding debts, it will be presumed in
every such case that the legislature intended that the liabilities
as well as the rights of property of the corporation which
thereby ceases to exist shall accompany the territory and
property into the jurisdiction to which the territory is annexed.
*Colchester* v. *Seaber*, 3 Burr. 1866.

Neither argument nor authority is necessary to prove that a
State legislature cannot pass a valid law impairing the obliga-
tions of a contract, as that general proposition is universally
admitted.    Contracts under the Constitution are as sacred as
the Constitution that protects them from infraction, and yet

the defence in this case, if sustained, will establish the proposition that the effect of State legislation may be such as to deprive a party of all means of sustaining an action of any kind for their enforcement. Cases, doubtless, may arise when the party cannot collect what is due under the contract; but he ought always to be able by some proper action to reduce his contract to judgment.

Suppose it be admitted that the act of the State legislature annulling the charter of the municipality indebted to the complainant, without making any provision for the payment of outstanding indebtedness, was unconstitutional and void, still it must be admitted that the very act which annulled that charter annexed all the territory and property of the municipality to the two appellant towns, and that they acquired with that the same power of taxation over the residents and their estates that they previously possessed over the estates of the inhabitants resident within their limits before their boundaries were enlarged.

Extinguished municipal corporations neither own property, nor have they any power to levy taxes to pay debts. Whatever power the extinguished municipality had to levy taxes when the act passed annulling her charter terminated, and from the moment the annexation of her territory was made to the appellant towns, the power to tax the property transferred, and the inhabitants residing on it, became vested in the proper authorities of the towns to which the territory and jurisdiction were by that act transferred; from which it follows that for all practical purposes the complainant was left without judicial remedy to enforce the collection of the bonds or to recover judgment for the amounts they represent.

When the appellant towns accepted the annexation, their authorities knew, or ought to have known, that the extinguished municipality owed debts, and that the act effecting the annexation made no provision for their payment. They had no right to assume that the annulment of the charter of the old town would have the effect to discharge its indebtedness, or to impair the obligation of the contract held by its creditors to enforce the same against those holding the territory and jurisdiction by the authority from the legislature and the public

property and the power of taxation previously held and enjoyed by the extinguished municipality.

Express provision was made by the act annulling the charter of the debtor municipality for annexing its territory to the appellant towns; and, when the annexation became complete, the power of taxation previously vested in the inhabitants of the annexed territory as a separate municipality ceased to exist, whether to pay debts or for any other purpose, — the reason being that the power, so far as respected its future exercise, was transferred with the territory and the jurisdiction over its inhabitants to the appellant towns, as enlarged by the annexed territory; from which it follows, unless it be held that the extinguishment of the debtor municipality discharged its debts without payment, which the Constitution forbids, that the appellant towns assumed each a proportionate share of the outstanding obligations of the debtor town when they acquired the territory, public property, and municipal jurisdiction over every thing belonging to the extinguished municipality.

Corporations of a municipal character, such as towns, are usually organized in this country by special acts or pursuant to some general State law; and it is clear that their powers and duties differ in some important particulars from the towns which existed in the parent country before the Revolution, where they were created by special charters from the crown, and acquired many of their privileges by prescription, without any aid from Parliament. Corporate franchises of the kind granted during that period partook much more largely of the nature of private corporations than do the municipalities created in this country, and known as towns, cities, and counties. Power exists here in the legislature, not only to fix the boundaries of such a municipality when incorporated, but to enlarge or diminish the same subsequently, without the consent of the residents, by annexation or set-off, unless restrained by the Constitution, even against the remonstrance of every property holder and voter within the limits of the original municipality.

Property set off or annexed may be benefited or burdened by the change, and the liability of the residents to taxation may be increased or diminished; but the question, in every case, is entirely within the control of the legislature, and, if no pro-

vision is made, every one must submit to the will of the State, as expressed through the legislative department. Inconvenience will be suffered by some, while others will be greatly benefited in that regard by the change. Nor is it any objection to the exercise of the power that the property annexed or set off will be subjected to increased taxation, or that the town from which it is taken or to which it is annexed will be benefited or prejudiced, unless the Constitution prohibits the change, since it is a matter, in the absence of constitutional restriction, which belongs wholly to the legislature to determine. Courts everywhere in this country hold that, in the division of towns, the legislature may apportion the burdens between the two, and may determine the proportion to be borne by each. *Sill* v. *The Village of Corning*, 15 N. Y. 297; *Mayor* v. *State, ex rel. of the Board of Police of Baltimore*, 15 Md. 376; *City of Olney* v. *Harvey*, 50 Ill. 453; *Borough of Dunmore's Appeal*, 52 Pa. St. 374.

Public property and the subordinate rights of a municipal corporation are within the control of the legislature; and it is held to be settled law that, where two separate towns are created out of one, each, in the absence of any statutory regulation, is entitled to hold in severalty the public property of the old corporation which falls within its limits. *North Hempsted* v. *Hempsted*, 2 Wend. (N. Y.) 109; *The Hartford Bridge Company* v. *East Hartford*, 16 Conn. 149, 171.

Extensive powers in that regard are doubtless possessed by the legislature; but the Constitution provides that no State shall pass any "law impairing the obligation of contracts," from which it follows that the legislature, in the exercise of any such power, cannot pass any valid law impairing the right of existing creditors of the old municipality. 1 Dillon, Municipal Corp. (2d ed.), sect. 41; *Van Hoffman* v. *City of Quincy*, 4 Wall. 535, 554; *Lee County* v. *Rogers*, 7 id. 181, 184; *Butz* v. *City of Muscatine*, 8 id. 575, 583; *Furman* v. *Nichol*, id. 44, 62.

Where a municipal corporation has the power to contract a debt, it has, says Dixon, C. J., by necessary implication, authority to resort to the usual mode of raising money to pay it, which undoubtedly is taxation. *State, ex rel. Hasbrouck*, v. *The City of Milwaukee*, 25 Wis. 122, 133.

Whenever the charter of a city, at the time of the issue of bonds, made it the duty of the city authorities to levy and collect the amount, when reduced to judgment, like other city charges, the same court held that a subsequent act of the legislature prohibiting the city from levying such a tax would be repugnant to the Constitution. *Soutter* v. *The City of Madison*, 15 id. 30.

State control over the division of the territory of the State into cities, towns, and districts, unless restricted by some constitutional limitation, is supreme, but the same court admits that it cannot be exercised to annul another regulation of the Constitution. *Chandler* v. *Boston*, 112 Mass. 200; 6 Cush. (Mass.) 580.

Cities or towns, whenever they engage in transactions not public in their nature, act under the same pecuniary responsibility as individuals, and are as much bound by their engagements as are private persons, nor is it in the power of the legislature to authorize them to violate their contracts. *The Western Saving Fund Society* v. *The City of Philadelphia*, 31 Pa. St. 175, 185.

Text-writers concede almost unlimited power to the State legislatures in respect to the division of towns and the alteration of their boundaries, but they all agree that in the exercise of these powers they cannot defeat the rights of creditors nor impair the obligation of a valid contract. 1 Dillon, Municipal Corp., sect. 128; *Blanchard* v. *Bissell*, 11 Ohio St. 96; *Lansing* v. *County Treasurer*, 1 Dill. 522, 528.

Concessions of power to municipal corporations are of high importance; but they are not contracts, and consequently are subject to legislative control without limitation, unless the legislature oversteps the limits of the Constitution. *Layton* v. *New Orleans*, 12 La. Ann. 515.

Bonds having been issued and used by a city for purchasing land for a park, which was pledged for the payment of the bonds, held, that a subsequent act of the legislature authorizing a sale of a portion of the park, free of all liens existing by virtue of the original act, was in violation of the Federal Constitution, as impairing the obligation of contracts. *Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 234, 247.

Laws passed by a State impairing the obligation of a contract are void, and if a State cannot pass such a law, it follows that no agency can do so which acts under the State with delegated authority. Cooley, Const. Lim. (4th ed.) 241; Angell & Ames on Corp. (9th ed.), sects. 332, 333.

Municipal debts cannot be paid by an act of the legislature annulling the charter of the municipality, and, if not, then the creditors of such a political division must have some remedy after the annulment takes place. Without officers, or the power of electing such agents, a municipal corporation, if it can be so called, would be an entity very difficult to be subjected to judicial process or to legal responsibility; but when the entity itself is extinguished, and the inhabitants with its territory and other property are transferred to other municipalities, the suggestion that creditors may pursue their remedy against the original contracting party is little less than a mockery. Public property, with the inhabitants and their estates, and the power of taxation, having been transferred by the authority of the legislature to the appellants, the principles of equity and good conscience require that inasmuch as they are, and have been for nearly twenty years, in the enjoyment of the benefits resulting from the annexation, they shall in due proportions also bear the burdens. *New Orleans* v. *Clark*, 95 U. S. 644, 654.

Equitable rules of decision are sufficiently comprehensive in their reach to do justice between parties litigant, and to overcome every difficulty which can be suggested in this case. States are divided and subdivided into such municipalities, called counties, cities, towns, and school districts, and the legislature of every State is required every year to pass laws modifying their charters and enlarging or diminishing their boundaries. Nor are the questions presented in this case either new in principle or difficult of application. New forms are given to such charters in every day's experience, when the limits of an old corporation are changed by annexation of new territory, or portions of the territory of the old municipality are set off and annexed to another town. Both corporations in such a case continue, though it may be that the charters are much changed, and that the inhabitants of the territory

annexed or set off fall under different officers and new and very diverse regulations.  *Beckwith* v. *City of Racine*, 7 Biss. 142, 149.

Pecuniary burdens may be increased or diminished by the change ; but, in the absence of express provisions regulating the subject, it will be presumed in every case where both municipalities are continued, that the outstanding liabilities of the same remain unaffected by such legislation.  Unlike that in this case, the charter of the old town was vacated and annulled, from which it follows that 'the same principles of justice require that the appellant towns, to which the territory, property, and inhabitants of the annulled municipality were annexed, should become liable for its outstanding indebtedness.

*Decree affirmed.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE FIELD and MR. JUSTICE BRADLEY, dissenting.

I am of opinion that it requires legislation to make a legal obligation against the new town, and make the apportionment of the debt ; and I dissent on that ground from the judgment and opinion of the court in this case.

NOTE. — *Mount Pleasant* v. *Cornell*, on appeal from the Circuit Court of the United States for the Eastern District of Wisconsin, was argued at the same time and by the same counsel as was the preceding case.

MR. JUSTICE CLIFFORD, in delivering the opinion of the court, remarked, that it embraced substantially the same facts as that case, and must be decided in the same way.

*Decree affirmed*