equity, is derived from state law, it is, *a fortiori,* the sound rule here. That it is a general principle of equity law that a court of chancery may decree a new trial after the courts of law are barred from so doing, is abundantly established by authority. Hil. N. T. 588, note (*a*); *Hoskins* v. *Hattenback,* 14 Iowa, 314; Story, Eq. Jur. § 887; *Fletcher* v. *Warren,* 18 Vt. 45; *Colyer* v. *Langford's Adm'rs,* 1 A. K. Marsh. 237; *Ballance* v. *Loomiss,* 22 Ill. 82.

The order dismissing the bill must be set aside; and it is so ordered.

---

### MORGAN *v.* TOWN OF WALDWICK and others.

*(Circuit Court, W. D. Wisconsin.　June 26, 1883.)*

TOWNS OF WALDWICK AND MOSCOW, WISCONSIN—LIABILITY FOR RAILROAD AID BONDS—DIVISION OF OLD TOWN.

As the evidence in this case shows conclusively that the people of both of the present towns of Waldwick and Moscow, formed by the division of the old town of Waldwick, in Iowa county, Wisconsin, considered and believed, at the time of the division of the old town of Waldwick, that each town was liable for its just proportion of the aid voted to the Mineral Point Railroad Company, represented by the bonds of the old town of Waldwick, for aid voted thereto, and the division was voted on that understanding, and would not have been voted except for such understanding, and the construction of the order of the supervisors of the original town making the division, and the liability of both towns for their respective portions of the debt, have been repeatedly recognized by the people and officers of said towns, and acted upon accordingly for a period of 20 years or more, although the order of the board of supervisors was somewhat equivocal, it is *held* that the town of Moscow should be held liable for the proportion of said debt then assumed by it, although there may be doubt as to the legal effect of the action dividing the two towns, and that the town of Waldwick should pay the balance.

In Equity.

*E. Marriner,* for complainant.

*Vilas & Bryant,* for defendants.

BUNN, J. In 1856 the town of Waldwick, in Iowa county, Wisconsin, issued its bonds to the amount of $10,000, with interest at 8 per cent., to the Mineral Point Railroad Company, to aid in the construction of said road. These bonds were negotiated, and the larger portion of them came into the hands of the plaintiff for value. At the time of the issuing of the bonds, the town of Waldwick was composed territorially of two townships of land running east and west, through both of which the road, as built by the said company, ran. In 1859 the people of the town of Waldwick petitioned the county board of supervisors of Iowa county to divide the town on the township line running north and south, through the middle. A popular vote was taken on the question, and it was carried by a large majority, and on the twenty-ninth of November, 1859, the county board of said county, having ample power by statute to make new towns, to

abolish old ones, and to alter and divide at pleasure, by order and resolution thereof, divided the town as petitioned into two towns, containing each a full township, or six miles square of territory, one town to retain the old name of Waldwick and the other to be called Moscow. After the division was made, and the two towns fully organized and in operation, and after they had paid some interest upon the bonds, each paying its equitable proportion according to the assessed valuation of each, the two towns, in December, 1860, held a joint meeting of their supervisors, and resolved, by joint resolution of the two boards, not to pay over to the railroad company any more of the railroad money then collected, or thereafter to be collected, in the two towns, until further orders.

Soon after this action of the towns, suit was brought against the town of Moscow by the present plaintiff, in the United States district court for Wisconsin, upon the coupons and bonds due and unpaid; and after litigation was had, both towns joining together in defending the suit and paying expenses, a judgment was rendered against the defendant town. This was before the state was divided into two judicial districts. After such division a second suit was brought upon the previous judgment in the western district of Wisconsin, where the two towns are situate, and a judgment again recovered against the town of Waldwick.

The present suit in equity is brought against the two towns, setting forth all of the facts, for a decree requiring them to pay each its due and equitable proportion of the previous judgment against Waldwick. And the question presented by the record is whether or not the court can grant the relief sought. The town of Waldwick makes no defense, but puts in an answer conceding its own liability, and claiming a liability on the part of Moscow to pay its due proportion of the bonds represented by the judgment against Waldwick. The town of Moscow answers, wholly denying any liability on its part.

Though a good deal of testimony has been taken, the facts are for the most part undisputed. Those material to the case, and not already noticed, will be stated as we proceed.

The order of the county board dividing the town is in writing, as follows:

"On motion, the following order relating to the division of the town of Waldwick was carried:

"The board of supervisors of the county of Iowa do order and determine as follows:

"(1) That the town of Waldwick, in said county, be, and the same is hereby, divided according to the petition heretofore presented to said board for that purpose, and the election heretofore had on such division, according to the order of the board, on the township or dividing line between range No. 4 east and No. 5 east of the fourth principal meridian, and that such parts of township No. 4 and 5 north, of range No. 4 east of the fourth principal meridian, as lie within said county, and comprise a part of the present town of Waldwick, retain the name and records of the present town of Waldwick, and that such parts of township No. 4 and 5 north, of range No. 5 east of the fourth prin-

cipal meridian, as lie in said county, and in the present town of Waldwick, be known and designated as the town of Moscow from and after the said second Tuesday of April, 1860.

"(2) That an election be held in the proposed new town of Waldwick, as organized and established by this order, at the school-house, on the second Tuesday in April, A. D. 1860, for the election of town officers, to supply vacancies caused by expiration of office, and also by said division of said town, and as by law required.

"(3) That an election be held in the proposed new town of Moscow, as organized and established by this order, at the house of F. McKennan, in said new town of Moscow, on the second Tuesday in April, A. D. 1860, for the election of town officers of said new town of Moscow, and that said election be conducted in all respects as town meetings are usually conducted, and that the electors present choose inspectors of election, as by law required.

"(4) That the division of said town of Waldwick, and the organization of the said new towns of Waldwick and Moscow, take effect and be in force from and after the said second Tuesday in April, A. D. 1860, and not until then."

The plaintiff contends that the effect of this order was to abolish the old town of Waldwick, and to create two new towns, and that, consequently, both towns remained equitably liable for its proper proportion of the previous indebtedness, within the decision of the supreme court in *Mount Pleasant* v. *Beckwith,* 100 U. S. 514. The order is somewhat equivocal in its language. There are some parts of it, certainly, when taken alone, would justify this construction. The order speaks of the *new town of Waldwick* as *organized and established by this order;* and in the same language it speaks of the new town of Moscow as *organized* and *established* by this order. Again, it speaks of the *division of said town of Waldwick, and the organization of said new towns of Waldwick and Moscow.*

This language would seem to imply the creation of two new towns by the board of supervisors. If it was the intention that the old corporation of Waldwick should remain, and one new town of Moscow only should be created, there was no great propriety in the use of the above language.

There are other provisions, however, in the order, as that providing for an election in the new town of Waldwick *for the election of town officers to supply vacancies caused by expiration of office, and also by said division of said town, and as by law required, and for an election in the new town of Moscow for the election of town officers of said new town of Moscow,* which might favor a different construction. Upon the whole, as there was no necessity for creating more than one new town, or for abolishing the old town, was it not for the practical construction put upon it by the town, perhaps the most rational construction of the order would be that the old town organization was not affected by the order, and that there was but one new town created by the board. But I think the practical construction placed upon the order by the towns themselves, and concurred in for upwards of 20 years, was different. At any rate, the evidence shows conclusively that the people of both towns considered

and believed, at the time of the division, that each town was liable for its just proportion of the railroad debt, and the division was voted on that understanding, and would not have been voted at all except for that understanding. And this construction of the order of the supervisors, making the division and the liability of both towns for their respective portions of the debt, has been repeatedly recognized by the people and officers of the said towns for a period of 20 years or more. And one question is, how much weight the court ought to give to this construction so long concurred in by the two towns? If the order was clear and explicit on its face, probably no weight at all ought to be given to it. But is not the order fairly capable of this construction?

The evidence shows that at the meeting held for the purpose of voting on the question of a division the question was canvassed by the electors as to the proper division of the railroad debt, and it was then and there publicly read out by the town officers having charge of the election that the debt would be divided between the two towns in proportion to the assessed valuation of each for the year 1859; and there is no doubt in my mind, from the evidence, (whatever weight it should have in the case,) that the division was voted with that understanding by the electors. After the division was made and the towns fully organized, there was a joint meeting of the two towns held for the express purpose of dividing the railroad and other money in the treasury of the old town of Waldwick, and also the railroad and other indebtedness, ratably between the two towns.

At that meeting there was present the board of supervisors of both towns, and many of the prominent citizens; and after canvassing the subject at length it was agreed in writing by the two boards of supervisors to divide the funds on hand in the treasury, and all debts in favor of or against the old town of Waldwick, in the proportion of 37 cents and 1 mill on the dollar for Moscow to 62 cents and 9 mills on the dollar for Waldwick. And the money in the treasury (a good part of it being money that had been raised to pay the interest on these bonds) was divided between the two towns in the proportion so agreed upon. Afterwards the towns raised money and paid interest on the bonds, and compromised and took up some of them in the same proportion. And when suit was brought on the bonds, all through the litigation, they acted together in defending the actions, and in employing and paying counsel, and in defraying the other expenses of the litigation, and in various ways and on different occasions the town of Moscow has recognized its liability to pay its proportion of the railroad debt according to the agreement of their several boards of supervisors and the understanding of the electors when the vote for division was had. As late as 1870, 14 years after the bonds were issued, and 10 years after the division of the towns and the agreement to pay the railroad debt in the above proportion, the two towns took up and compromised certain of the bonds, each town

v.17,no.4—19

paying, as they had done before, in the proportion agreed upon by the supervisors.

Again, five years later, on July 23, 1875, at what appears from the records to have been a public town meeting, held by the electors of the town of Moscow, it was resolved that an offer to settle the bonds at 60 cents on the dollar be accepted, and that the amount of such bonds as were held by G. W. Cobb against the towns of Waldwick and Moscow should be raised by tax the next fall.

And, later still, in January, 1878, 18 years after the division of the towns, the records show that at a meeting held on that day for the purpose of taking into consideration the advisability of settling the judgment against the town of Waldwick, said judgment being offered for settlement by Mr. Cobb, it was resolved—*First*, that the town boards of Waldwick and Moscow be authorized to settle for said indebtedness at 60 cents on the dollar; and, *second*, that the town boards are authorized to ascertain from Mr. Cobb whether he will accept payment in two annual installments. If not, they were authorized to levy and collect a tax for the settlement in one year. This meeting appears to have been a joint meeting of the electors of both towns, held at a school-house near Thomas Grubbs', a point designated as *"between the two towns."* So that, in various ways, whether legal or illegal, by the voluntary action of the people, and by the constituted authorities of the town, Moscow, up to 1878, and perhaps later, had uniformly and always continued to recognize the binding obligation of the agreement to pay its share of the railroad debt, and to carry out the understanding to that effect had upon the division of the old town. And it was some time after this that the town of Moscow made the discovery that it was never under any legal liability for any portion of this debt from the day when the old town was divided and the new town of Moscow was erected and set off.

The contention now is, and it seems to me there is great force in it, that the effect of the order of the county board of supervisors was simply to create a new town out of the territory of the old town of Waldwick, leaving the old corporation intact; that inasmuch as this was done without any provision being made for a division of the property, or the indebtedness of the old town, the legal effect was that the old town took all of the town property and became legally liable for the entire indebtedness; that the subsequent agreement of the boards of supervisors to divide the property and the indebtedness was *ultra vires*, and being without authority of law, and not at all within the powers and jurisdiction of the two boards, the agreement was void, and no subsequent ratification of it by the town authorities or the people of Moscow is binding; that the plaintiff must have taken this view when he brought his action at law and took judgment against the old town; that the plaintiff, still holding that judgment, and no suggestion being made in regard to the re-

sponsibility of the town of Waldwick, that the plaintiff's remedy at law is complete, and that he has no equity as against the defendant Moscow.

After a thorough study of the case I am fully convinced that it is one of considerable embarrassment and difficulty, and I have great satisfaction in the knowledge that it is one where the parties are entitled, by law, to a review of the decision of this court in that higher national tribunal whose decision we are most willingly bound to respect. It may be proper to say that, realizing as I have the difficulty of the case, I have laid it before the circuit judge, and also before his honor, Justice HARLAN, of the supreme court, and counseled with them in regard to it, and while we are not fully agreed upon the grounds of the decision, and the manner of relief against the town of Moscow, we are all agreed that it is just and equitable that that town should pay its proper proportion of this claim. The people and property of that town, before the division, were legally and equitably bound with the other inhabitants and property of the old town for the payment of the railroad debt. The division was voted upon the understanding that the new town should remain so bound. An agreement was made by the proper contracting officers of the town, perfectly just and equitable in its character, founded on a valid consideration, to divide the railroad and other money in the treasury, and to pay each its proportion of the debt in the ratio of taxable property in the two towns. The money in the treasury was actually divided on the strength of that agreement, and the agreement has in various ways been confirmed by the people and officers of the town, —been ratified and carried out for 20 years, without any doubt or suggestion as to the power of the town to make the agreement, or the equitableness of it when made. If it be possible for the people of a town to adopt and ratify such an agreement, it has been done in this case. The agreement has, in part, been executed, and the town of Moscow has had the full benefit of it. It has also had the full benefit of the railroad, for the building of which the debt was originally incurred Good faith and common honesty, as between man and man, now require that the town should carry out the understanding had when it was set off, and when the contract was made, which has been lived up to for over 20 years by both parties.

Perhaps the only room to doubt is whether the plaintiff has good standing ground in a court of equity, and connects himself with, and is in a position to take advantage of, the equities between the two towns; and whether, in giving a decree for the plaintiff, the court is not invoking a broader equity than is to be found in the books. But certainly the essential justice of the case will not allow the town of Moscow at this late day to repudiate its obligation of upward of 20 years' standing and recognition.

I am not sure but the action of the people of the town at the time of the division, and the subsequent action of the two towns ever since,

amount to a contemporaneous and practical construction of the order of the board of supervisors dividing the old town; that its effect was to abolish the old town, and create two new corporations, which should be accepted by the court as the proper construction of the order, especially as the order is not clear in its terms, and might bear that construction. In that case, that part of the old town which formed the new town of Moscow was never relieved from its obligation to pay this debt; and the agreement of the two town boards would merely be a ratification and recognition of their already existing liability. In any case, there remains the agreement, which seems perfectly rational and equitable, not against public policy, nor immoral, made in accordance with the views and wishes and understanding of the people of both towns, founded upon an actual money consideration, ratified and confirmed by the people repeatedly, and which has been in process of consummation and execution for a period longer than the longest statute of limitations known in the books, and the full benefits of the agreement had and still retained by the party now seeking to repudiate on the sole ground that it is *ultra vires*.

There was some contention on the argument as to whether the county board of supervisors had any power to divide the property or indebtedness of the towns. The legislature had that power, and it conferred on the supervisors the general power to create new towns and to abolish old ones. But, at the time this division was made, there was no express power given to divide the property or indebtedness. That power has been conferred by statute since. But whether it existed at the time as a necessary incident to the other powers granted, I do not find it necessary to decide. There is one other circumstance in the case worthy of mention. The petition of the people for the division of the town was not produced on the trial, and cannot be found. What light it might throw upon the order of the county board cannot be known.

The matter of the petition was referred to a committee, who made a report in writing, which was introduced in evidence, and upon which the order is founded. The order follows the language of the report in all essential particulars.

Not without considerable hesitation I have decided upon a decree in favor of the plaintiff that the town of Moscow pay to the plaintiff that portion of the plaintiff's judgment which represents 37 cents and 1 mill on the dollar of the bonds, and interest to date of decree, with one-half the costs of this suit; and that the defendant the town of Waldwick pay the balance of the judgment and interest, with one-half the costs of suit. I do not intend that the defendant Moscow shall pay any part of the costs of the former suit, nor the compound interest implied by the judgment rendered on the first judgment against Waldwick; but only its ratable proportion, according to the agreement of the town board, of the bonds and interest included in the judgment, the same as though this action was now

brought on the bonds instead of the judgment, without any advantage of the plea of the statute of limitations running upon the coupons.

And the proposed amendment of the defendant Moscow, to set up the statute of limitations against the coupons included in the judgment, is not allowed.

See *Sonstiby* v. *Keeley,* 11 FED. REP. 578, and note, 580.