Williams, J.
The statute relied on by the defendant as authority for the annexation, it is attempting to accomplish, is assailed on various grounds, one of ‘which is, that it is in conflict with, section 1, of article XIII, of the constitution, which prohibits the conferring of corporate power by special legislation.
As this objection is predicated largely, if not entirely, upon the first section of the original act, and seems to rest upon the word “.present,” therein contained,- which was eliminated by the amendment adopted before any steps toward the annexation were taken, it is proper to consider the effect of that amendment. We understand the plaintiff’s counsel to contend, that the first section rendered the whole statute obnoxious to the constitutional provision referred to, and, that it could not, therefore, be made valid by amendment, though the unconstitutional feature was thereby removed. Assuming. the premises to be sound, the conclusion, we think, does not follow.
“Where one or more sections of a statute are amended by a new .act, and the amendatory act contains the entire section or, sections amended, and repeals the section or sections so amended, the section or sections as .amended .must be construed as though introduced into the place of the repealed section or sections in the original act, and, there,fore, in view of. the provisions of the original act as it stands after the amendatory sections are so introduced.” McKibben v. Lester, 9 Ohio St., 627.
*446 And it may be added, the other sections are • to be interpreted in connection with, and in view of, ' the amended section or sections, and, in its application to cases arising after the amendment has been made, the whole statute must have the same operation and. effect as if it, then had been reenacted, in terms. Hence, an unconstitutional statute may be amended into a constitutional one, so far as its future operation is concerned, by removing’ its objectionable provisions, or supplying others to conform it' to the requirements ’ of the constitution. It is, therefore, unnecessary, in passing upon the constitutionality of this statute, to consider the first section before it was amended.
1. This court decided, in State v. Cincinnati, 20 Ohio St., 18, that the' extension by a municipality of its corporate jurisdiction, by the enlargement of its territorial boundaries, is the exercise of a corporate power which cannot be conferred by special act; so that, the question here, is whether the statute under consideration, in its amended form, is an act of that nature. The first section provides: “That any city of the first grade of the first class shall have the power to annex to its corporate limits any contiguous municipal corporation or corporations of other grades or classes situate in the county'containing such city of the first grade of the first class, upon compliance with the terms and conditions hereafter recited.” The classification of municipal corporations, adopted by the codification of 1880, has been continued in force. By it, such corporations are divided into cities,' villages and hamlets; and'cities into'two classes, first ‘ and ‘ second, and each class into grades; those of the first class into three grades, with provision fora fourth, and those of thé second *447 class into four grades. At no time since the adop-' tion of that classification has there been more than one city belonging'toeither grade of the first class; Cincinnati being the only city of the first grade, Cleveland the 'only city of the second, and Toledo the only one of the third grade of that class; and, while other cities might have come, or may hereafter come into one or the other of those grades, no doubt one purpose of the classification, if in-' deed that was not its only purpose, was to provide a plan by which legislation applicable alone to each of those cities might be enacted without overstepping the limitations of' the constitution. The validity of legislation of that class was early called in question, but its constitutionality has been repeatedly maintained. It is said, in State v. Brewster, 39 Ohio St., 653: “The objection that the classification was illusory was conceded to be forcible, but did not prevail.” In view of the volume to which such legislation has grown, and is likely to further grow in the future, it is still urged that a better, as well as a sounder rule would have been established, if the objection had prevailed; But, whatever thé individual views of judges on-that subject may now be, the validity of legislation of that kind has been so long recognized, and it enters so largely into the government of the cities of this state, that the evil consequences to be apprehended from overturning the established rule would greatly exceed any likely to result from adhering to it. At all events, as has been declared more than once by this court, the rule has become so firmly established that it is no longer open to controversy. ' State v. Pugh, 43 Ohio St., 98; State v. Hawkins, 44 Ohio St., 109; State v. Hudson, 44 Ohio St., 137; State v. Wall, 47 Ohio St., 499; State v. *448 Smith, 48, Ohio St., 211. . The question is. always open; -however, whether a particular, statute, is within the rule; and it -is held not to he a valid objection , “against legislation, general in form, concerning cities of a designated class and -grade; that -but one city in the state .is within -the partic-. ular classification at the time,of, its enactment;” nor, .“that ..the belief or intent of the ^individual members of. the general assembly.who voted, for the actwqs that it should apply only to a particular city.--” State v. Pugh, supra. Nor is the power of classification confined to that based upon-.population, or the .division of municipalities into classes or grades according-to the number -of their inhab-. itants; and while it is-difficult, .if not impossible,, to accurately define the power by any general rule,, it is settled that proper classification may be based', upon the peculiar situation of municipalities, their conditions,. internal and surrounding, which render different legislation with respect to them necr essary, or especially .appropriate. Bronson v. Oberlin, 41 Ohio St., 476; Costello v Wyoming, 49 Ohio St., 202. And, -whatever the plan.or-.basis of classification,-the- principle upon which .the validity of legislation -with respect to a particular class depends,--is that other municipalities-may, attain to the same class, and become subject to, and avail themselves of, the benefits of the 'act; if -that may be done, the statute, -is a-law of ,a general -nature,- and not invalid though.it-confer corporate power. State v. Pugh, supra; State v. Hawkins, supra. Tested by-that principle,, the statute under which, the annexation- proceeding here involved was instituted, is not-a special.-act. .It is continuing-baits-'.operation,, and adapted to future, proceedings of the same -kind, as well, as to the present one. *449 And, though the defendant is now the only city of the first grade of the first class in the state, every city hereafter coming into that grade and class may, under the same circumstances, without further legislation, avail themselves of the provisions of the act, and exercise the power of annexation in the manner and upon the conditions prescribed in the act. Under existing legislation, every such city will be provided with the same officers and governmental machinery as the defendant, and be subject to the same general laws that are applicable to the defendant; and the like result will ensue with regard to contiguous municipalities of other grades; those contiguous to futnre cities of the first grade of the first class will, without further legislation, be under the same general laws that those now contiguous to existing cities of that grade and class are, and have the ^ame form of government.
■ 2. The act being of a general nature, is it in conflict with section 26, of article II, of the constitution, which requires that all laws of a general nature shall have a uniform operation throughout the state? We think it is not. In order that a law may have such operation, it is not necessary that there be in every part of the state persons or objects upon which it can operate, nor that many persons or objects be within the scope of its operation ; it is sufficient if the law operate uniformly upon all persons or objects, or classes of either, in the same situation and condition, and all that may come within the relation and circumstances for which it provides; and it is clear the statute in question has such operation, since all cities of the class and grade of the defendant, and all that may hereafter attain to that grade and class, may *450 avail themselves of the provisions of this statute, and annex contiguous municipalities of other grades, upon the same conditions and terms under which the defendant is authorized to make such annexation, and by the same mode of procedure. McGill v. State, 34 Ohio St., 228; Senior v. Ratterman, 44 Ohio St., 661.
3. It is further claimed that the statute is repugnant to those sections of the judicial article of the constitution (sections 1 and 4 of article IV), which declare that the judicial power of the state shall be vested in certain courts, among them the courts of common pleas, and, that “the jurisdiction of the courts of common pleas and of the judges thereof shall be fixed by law. ’ ’ The particular provisions of the statute pointed out as being so repugnant, are those contained in sections 5, 6 and 7, which, confer authority on the court of common pleas to appoint three commissioners, fix their compensation, and approve or modify their report. These commissioners are required to make a detailed account of the indebtedness of each municipality included in the annexation, and of the school districts affected by it, and arrange the terms and conditions of the annexation and make report to the court, which may approve it as made, or modify it, and then approve it. When the report is approved, the annexation, it is declared, shall be deemed complete, and the action of the court shall be final. The powers to be exercised under these provisions of the statute, it is said, are not of a judicial nature, and cannot, therefore, be conferred on the court; and, as the annexation cannot be consummated without their exercise, the whole statute, it is contended, becomes inoperative. There appears to be no constitutional obstacle in *451 the way of investing a court or judge with such powers. Nor is there any valid objection to their due execution, if the court or judge chooses to perform them, for third persons cannot complain on the ground that their performance could not have been enforced. State v. Gazlay, 5 Ohio, 14; State v. Judges, 21 Ohio St., 1; Walker v. Cincinnati, 21 Ohio St., 14. In the two cases in the 21st Ohio St., above cited, powers analogous to those pointed out as objectionable in this statute, were conferred on the judges instead of the courts; and in that respect the cases are distinguishable from this one; but the distinction is not important. In the case of the State v. Gazlay, the statute, as appears from the report, authorized the court to assess a tax upon lawyers, which, while in no sense judicial action, is something more than the appointment of a ministerial or administrative board or officer; and this court upheld the law, and enforced the tax. All such powers, when the court is directed to execute them, are necessarily to be performed by the judge, for they can be in no other way; and hence, it can make no substantial difference whether the statute confers them, in terms on the court, or on the judge of the court. It will be found that in many instances, in providing measures of importance in the municipal government of the defendant, and other cities, and in the conduct of public affairs generally, the legislature has imposed upon the court, eo nomine, duties not dissimilar to those the court is required to perform by the statute in question. Thus, it is required to fix the number of justices of the peace in new townships (Revised Statutes, section 566); to approve the report and fix the compensation of commissioners appointed to establish the seat of justice of new *452 counties, and to appoint a director to purchase land and lay the same off into lots, streets, and alleys, in such county seat,, and prescribe regulations for the action of the director in so doing-, and in the disposition of the lots (sections 832-7); to appoint persons to examine the reports of county commissioners, and persons to examine the county treasury (sections 917, 1131); to appoint city hall trustees (section 2559-a-l); a board, of tax commisioners (section 2690-«); trustees of the sinking-fund- (section 2715); directors of certain, universities (section 4098); trustees of children’s homes (sections 7913-37); and to grant licenses to ferries and auctioneers (sections 4222-5), (4256-9); and perform many other similar duties. Other statutes confer like powers upon judges. And in whichever form the power has been given, the judges, so far as we are aware, have conformed to the legislative will, whether they could have been compelled to do so or not; and many important public results have been, and are being accomplished, in consequence. The legislature has, no doubt, empowered the courts and judges to perform these acts, and others of like nature, because in that way the best public agencies necessary in carrying the legislation into effect, are most likely to be obtained; and we are not convinced, either that the legislative judgment in that regard is at fault, or, that the legislative purpose must fail; at least, so long as the courts and judges charged with the performance of the act, interpose no objection. In regard to the power to be exercised by the court of common pleas in approving or modifying the report of the commissioners appointed to adjust the terms of annexation, and the dangers suggested, of impairing the rights of creditors of either of *453 the municipalities, or other private rights, it is sufficient to say, the case has not yet reached that state, where any actual violation of those rights has occurred, or any. probable violation of them is apparent. For aught that can be now known, the terms of annexation may be adjusted to the satisfaction of all concerned; and if the rights of creditors, and others be violated, the individuals affected must seek the needed redress.
4. Another objection made to this statute is, that the object sought to be accomplished by it, in the mode provided, is beyond the range of legislative authority, because it authorizes annexation, and consequently taxation, without the consent of those who are affected by it. The proposition of counsel, as stated in the brief, is:
“If annexation of one municipal corporation to another, be so authorized as to vest in the agencies empowered to effect the union, final authority to require substantial taxes for objects accomplished, and purely local to the’ annexing corporation, to be imposed upon the taxable inhabitants of the municipality proposed to be annexed, then the exercise of power to annex must be founded in mutual consent. ”
That the enlargement of the territorial boundaries of municipal corporations by annexation, and the consequent extension of their corporate jurisdiction including that of levying taxes, are legitimate subjects of legislation, must be admitted; and hence, the extent to which such legislation shall be enacted, both with respect to the conditions and'circumstances under which the annexation may be had, and the manner in which it may be made, rests wholly in the discretion of the general assembly, except in so far as limitations upon its* *454 power are contained in the constitution. Accordingly, legislation has been sustained which authorized the annexation of territory, without the consent of its inhabitants, to a municipal corporation having a large unprovided for indebtedness, for the payment of which the property included within the territory annexed became subject to taxation. Powers v. Commissioners, 8 Ohio St., 285; Blanchard v. Bissell, 11 Ohio St., 96. In both of these cases it was held, that the annexation might be made without the consent, and even against the remonstrance of a majority of the persons residing on the annexed territory; that the lands thus annexed were liable to local taxation for the payment of the pre-existing indebtedness of the municipality; and, that the statute authorizing such annexation was constitutional; the court saying in the first of the cases, that there is no constitutional provision on the subject, and that “it would require a very artificial and unsound mode of reasoning to hold that territory could not be annexed to a town which owed debts, until the owner of such territory were paid a compensation in money for a proportional part of such debt, on the ground that the property annexed was condemned for public use;” and further, that it is not ‘ ‘to be presumed that a municipal corporation has contracted a debt without being correspondingly benefited.” And in Metcalf v. State, 49 Ohio St., 586, a statute was held valid which, in terms, detached from a city, without its consent, territory included in its corporate limits, and attached to it another taxing jurisdiction. The principle established by these cases,. must control the decision of this one, so far as the question now under consideration is concerned, unless, as coun *455 sel for the plaintiff contend, the principle is inapplicable on account of the nature of the indebtedness of the defendant, or because the territory proposed to be annexed is already embraced in organized municipalities. The indebtedness of the defendant, which it is claimed distinguishes this ease from those above referred to, is that incurred for what is known as “The Cincinnati Southern Railroad,” for water works, city hall, and some other local improvements aggregating many millions of dollars. It does not appear what was the nature or amount of the indebtedness of the respective municipalities involved in the cases of Powers v. Commissioners, or Blanchard v. Bissell; and it should be presumed, counsel claim, that it was created for the necessary or usual governmental purposes, and not for local improvements. Allowing the presumption, it is not perceived how the amount or nature of the municipal indebtedness can affect the right of annexation, if it be otherwise legal; for the power to bring into a municipal corporation, by annexation, property not theretofore subject to taxation for municipal purposes, and lay taxes upon it to raise funds for the payment of any previously existing municipal debt, necessarily includes the power to do so for the payment of every such debt lawfully incurred. Persons thus brought into the annexing corporation, and their property, like all of its other inhabitants, and their property, receive and enjoy the benefits of all local improvements, and should share the burdens existing when the enjoyment commences; and, in like manner the inhabitants of the annexing corporation enjoy the benefits and share the burdens arising from the local improvements of the municipalities annexed. If a. valid *456 objection to the annexation could be predicated upon the nature of the indebtedness for the payment of which the property included in the annexation may be taxed without the consent of its owners, the reason would seem to be stronger for allowing it where the debt was incurred for purely governmental purposes; for the benefits derived therefrom are not continuing1, nor the results tangible, like those arising from permanent public improvements, but may have entirely ceased, and so be no longer capable of enjojrment by the persons included in the annexation, except in' so far as they may be attributable to good municipal government resulting from the expenditure. But the power of taxation does not rest upon the consent of the taxed, except as that consent is implied or shown in' the enactment of laws by the representatives of the people, or is made requisite by legislation; and, therefore, taxes may be imposed, or authorized by the legislative body, within its discretion, for all public purposes, so long as the fundamental law is not violated. We cannot think that because the annexation authorized by the statute may result in the taxation of property without the owner’s consent, for the payment of the lawful indebtedness of the annexing corporation, the passage of the act was a usurpation of legislative power. If either of the municipalities sought to be annexed should be the owner of private property which may be taxed, it stands on the same footing as other owners of private property; its rights can be no greater than theirs, and •hence, there can be no more necessity for its consent, than for theirs; and property held by it for public purposes, will continue to be held for such *457 purposes, after the annexation is completed, until other lawful disposition is made of it. Nor do we think the general assembly exceeded its legislative power, in authorizing the annexation of municipalities of a lower grade, to one of a higher grade. Grant its power to annex, or provide for annexing to a city or village, adjacent territory against the will of its owners and occupants, and there does not appear to be any satisfactory reason for denying’ the power where the territory is coextensive with the boundaries of another municipal corporation, especially when there is no such limitation in the constitution. It is maintained by. very high authority, that it is clearly within the legislative discretion, to extend or restrict the boundaries of municipal corporations, “or consolidate two or more into one.” Cooley on Constitutional Limitations, 228, 6th ed.; and it is declared by Mr. Justice Clifford, in Mr. Pleasant v. Beckwith, 100 U. S., 514-524, to be the constant practice for legislative bodies to divide or consolidate municipal corporations, and that such action is often necessary for the public interests and convenience. And in Meriwether v. Garrett, 102 U. S., 472-511, it is said by Mr. Justice Field: “Municipal corporations are mere instrumentalities of the state for the more convenient administration of local government. Their powers áre such as the legislature may confer, and these may be enlarged, abridged, or entirely withdrawn at its pleasure. This is common learning, found in all adjudications on the subject of municipal bodies and repeated by text writers. There is no contract between the state and the public, that a charter of a city shall not be at all times subject to legislative control. * * * There is no such thing as *458 a vested right held by any individuals in the grant of legislative power to them.” Many other authorities much to the same effect, are cited in the brief of counsel for the defendant which we deem it unnecessary to notice further. We have been referred to none maintaining the contrary doctrine, and have found none. In the light of these authorities, we would be unwarranted in holding that the legislature transcended its powers in passing the act in question, and, observing in this case the well established rule, that the courts should not declare a statute unconstitutional unless convinced that it is clearly so, we hold that the statute, in all respects, is constitutional and valid.
5. The remaining question, is whether the statute has thus far been complied with. The plaintiff claims it has not been in the mode of submitting the question of the annexation, at the election held under the statute; that the question of the annexation of all the villages sought to be annexed was the only one submitted, so that, the electors of each village was denied the right to vote on the question of its annexation, and could only vote for or against the annexation of all. This seems to be in strict conformity with the statute. The second section .provides that the city desiring to annex any contiguous municipal corporation or corporations, shall pass an ordinance declaring such intention, and describing- the municipal corporation or corporations it desires to have annexed; and section three provides that when the city desiring the annexation, determines in favor of the same, its mayor, and the mayors of the different municipal corporations sought to be annexed, shall each issue a proclamation, notifying the qualified electors of their respective munici *459 palities, of the time and place of holding an election “to determine whether such municipalities shall be annexed. ’ ’ There is but one question to be determined, and that is whether all the municipalities sought to be annexed, if more than one, shall be annexed; and in the determination of that question, the electors of all such municipalities, and of the city desiring the annexation, are equally interested. The statute further provides that the annexation shall be deemed to have carried, if a majority of the votes “cast upon such proposition, shall be in favor of annexation.” We find no provision in the statute which contemplates a separate vote by the electors of each municipality upon the question of its annexation.
The defendant, having shown that it is lawfully possessed of the privileges and franchises it is charged with exercising, is entitled to judgment.
Judgment accordingly.
Shauck, J., dissents.
Spear, J., not sitting.