## In re VACHERON et al.

(Supreme Court, Appellate Division, Second Department. May 8, 1900.)

GREATER NEW YORK CHARTER—INCORPORATED MUNICIPALITY—LIABILITIES—
ENFORCEMENT.
    Greater New York Charter, § 4, confers all local administration and government on the city of New York; section 5 makes all claims existing against constituent municipalities liabilities of the city; section 1588 renders the people and property of Queens county liable to existing creditors the same as if it had not been incorporated; section 902 provides that sums necessary to pay county charges of Queens county shall be submitted in the comptroller's statement to the municipal assembly, which shall tax property included in the county therefor; and section 151 cre-

ates an auditing bureau to revise and settle accounts in which the city is concerned. *Held*, that a claim for sprinkling highways under contract with Queens county before its incorporation should be presented to the city authorities of Greater New York, and that mandamus would not be granted against the authorities of Queens county to compel the audit and payment thereof.

Appeal from special term, Kings county.

Application by Eugene F. Vacheron for a peremptory mandamus against the board of supervisors of Queens county and Charles L. Phipps, treasurer of Queens county, to compel the audit and payment of a claim for street sprinkling. From an order denying the application, applicant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

Henry A. Monfort, for appellant.
Isaac P. Coale, for respondent board of supervisors.

GOODRICH, P. J. On July 6, 1897, the applicant entered into a written contract with the board of supervisors of · the county of Queens, whereby the board employed him to sprinkle certain county roads which now are partly in the new county of Nassau and partly in the present county of Queens, between the 1st day of May and the 1st day of November in each year, for the period of 10 years beginning August 1, 1897, at a stipulated sum of money monthly per mile of roads sprinkled. The applicant began the performance of the contract in August, 1897, and continued work until November of that year, and also in the year 1898, during the months specified in the contract. He presented his bills each year to the board of supervisors, which audited them, and they were paid by the county treasurer. By chapter 588 of the Laws of 1898, the county of Nassau was erected from the territory of the county of Queens not embraced within the limits of the city of New York by the Greater New York charter, which took effect January 1, 1898. During May, June, and July, 1899, the applicant continued the sprinkling of the highways, and thereafter presented to the board of supervisors of the county of Queens his bills for audit, and, payment being refused on the ground that the maintenance of public highways in the county of Queens was no longer a charge upon the county, the entire control of streets having been devolved upon the city of New York by the charter, he applied for a peremptory writ of mandamus to compel the said board of supervisors to audit his bill and issue their warrant for the payment of said bill, which included the work done by him in both the county of Nassau and the present county of Queens. The court denied the application, and the applicant appeals.

It is evident that the decision of this appeal must turn upon the question whether the duty of audit of such a bill and of issuing a warrant to the county treasurer for its payment remains in the board of supervisors of the county of Queens or is devolved upon the comptroller of the city of New York. It may be assumed that the county of Queens is not absolved from the obligation of its contract, and that it still remains liable for the amount to be paid un-

der that contract. Section 4 of the Greater New York charter states that the local administration and government of the people and property within the territory of the present city shall be exercised by the city of New York. All valid and lawful charges and liabilities existing at the time of the charter against any of the constituent municipal corporations taken into the city "shall be deemed and taken to be like charges against or liabilities of the said the city of New York, and shall accordingly be defrayed and answered unto by it to the same extent, and no further, than the said several constituent corporations would have been bound if this act had not been passed." Section 5: "So far as resort to taxation is authorized or necessary to pay such debts, such taxation shall extend equally throughout the territory of the corporation herein constituted." Section 5 provides also that all the valid debts of the municipal corporations within the territory of the new city shall be the common debt of the city of New York, while section 1588 provides that "nothing herein contained shall impair the obligation of any contract; and the property and inhabitants of such parts of the county of Queens as are by this act consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, shall continue liable to the existing creditors of the said county of Queens, in like manner as if this act had not been passed." Section 902 provides that the sums necessary to pay county charges of that part of the county of Queens included within the city shall be submitted in the comptroller's statement to the municipal assembly, which is directed to levy upon and collect from the taxable property of such portion of the county of Queens the sums necessary to be raised for such county charges, "to the end that each of said counties and said part of Queens county shall ultimately bear and pay all expenses necessary to be incurred within the county or part of county for county as distinguished from city purposes." Chapter 6, tit. 1, defining the duties of the comptroller, provides for an auditing bureau in the finance department, which shall have control of the fiscal concerns of the corporation, and for an auditing bureau "which, under the supervision of the comptroller, shall audit, revise, and settle all accounts in which the city is concerned, as debtor or creditor." Section 151. Section 547 provides for the maintenance of highways, and confers upon the municipality all powers and duties "relating in any way to the sweeping and the cleaning of the streets, avenues, highways, boulevards, squares, lanes, alleys, and other public places of the city." Section 416 confers upon the board of public improvements power over the sprinkling of streets, while by section 462 the word "street" is to be deemed to include all that is included in the word "highway."

The scheme of the charter, in the sections thus grouped, is that county charges like those herein involved shall be audited, and the money necessary to pay them collected, by officers of the present city, instead of being audited and collected by the authorities of the county of Queens, and all powers formerly possessed by the said authorities for that purpose are devolved upon the officers of the present city. Wherever any portion of the moneys thus raised is

chargeable against the county of Queens, it shall be collected from property within its territory,—that is, the borough of Queens,— but all this is to be done through the authorities of the city. In Mt. Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699, it was held that when a municipal corporation is legislated out of existence, and its territory annexed to other corporations, the latter, unless the legislature otherwise provides, become entitled to all its property and immunities, and severally liable for a proportionate share of all its then subsisting debts, and vested with its power to raise revenue wherewith to pay them by levying taxes upon the property transferred and the persons residing thereon.

The obligation of the county of Queens to pay the amount due under the applicant's contract is not impaired by the new provisions. The charter provides only for the method through which and the agencies by which such county charges shall be audited and paid. Such a change of method and agencies is within the power of the legislature. The applicant is deprived of no right, and the county of Queens is not relieved from any obligation to him. He is merely relegated for the enforcement of his rights to the officers of the present city.

It follows that the order of the special term should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.