STROUD vs. THE CITY OF STEVENS ·POINT.

SCHOOL DISTRICTS. (1) *Not chartered, but* quasi *corporations.*

CORPORATIONS. (2) *Transfer of all functions from, terminates existence of.* (3, 4) *Case stated. School district held dissolved, and city, its successor liable for its debts.*

1. School districts are not formally chartered corporations, but are *quasi* corporations, variable in organization and extent, and having corporate existence by force only of their public functions.
2. Even in the case of chartered municipal corporations, where an old corporation is *deprived of all its functions* by the legislature, and those functions are transferred to another corporation within the same territorial limits, the former ceases to exist.
3. The charter of the defendant city (ch. 267, Laws of 1858) left common schools in that city under the town system; and school district No. 1, comprising part of the city, remained in operation, outside of the charter, until ch. 167, Laws of 1873, took effect.
4. The act of 1873 amended the city charter by providing that the board then having control of the schools in the city should " cease to act," and by creating a new board of education as a part of the machinery of the city government, and vesting in it the sole control of said schools (under the general supervision of the county superintendent), and requiring the old board to surrender to it all effects belonging to school district No. 1. *Held*, that the effect of the act was to terminate the corporate existence of said school district, and render the city its legal successor, liable for its debts.

APPEAL from the Circuit Court for *Outagamie* County.

Action brought by *Stroud* to recover the sum of $300 claimed as teacher's wages, upon an agreement entered into between

himself and school district No. 1 of the city of *Stevens Point*, whereby it was agreed that he should teach in the principal department of one of the ward schools of the city for ten months, commencing Sept. 1, 1872, for $100 per month, and be paid the amount due upon the contract on or before July 1, 1873.   The complaint alleged that, at the date of the agreement, the district was identical in extent and boundaries with the city; that on the 1st day of April, 1873, the voters of the several wards of said city elected a board of education pursuant to the provisions of ch. 167, Laws of 1873; that the board so elected organized on the 14th day of April, 1873, and thereupon the school board, consisting of director, clerk and treasurer of said school district No. 1, ceased to act as such, and the sole control of the schools of the city was vested in the board of education, and the former officers of the district surrendered to the persons of said board authorized to receive them, all moneys, books and property of the district; and said district as such ceased to exist, and had no organization thereafter; that the plaintiff entered upon his employment and taught said school until March 27, 1873; has since been, and still is, willing to complete his contract, but the board of education refuses to allow him to do so, or to pay him his wages for the portion of the term subsequent to March 27th.   He averred tender of performance, April 15, 1873, presentation of his claim for wages from March 27th, to the board of education and to the common council, and their rejection of the same.   The answer admitted the contract, the creation and organization of the board, its succession to the rights and authority of the officers of school district No. 1, denied the other allegations of the complaint, and alleged failure of plaintiff to perform.

On the trial the plaintiff introduced evidence tending to establish the allegations of his complaint, except, as was admitted, that school district No. 1 was in the city limits, but that two sections of the territory of the city were never included in the limits of said district.

The defendant moved for a nonsuit on the ground, "that the plaintiff has no right of action against the defendent." Motion granted, and the plaintiff appealed from judgment of nonsuit.

Chapter 167, Laws of 1873, amended the charter of the city by providing that "the public schools of the city shall be under the general management, control and supervision of a board of education, consisting of two members from each ward, to be elected, etc.; prescribes the duties of the board and their organization by the election of a president, clerk and treasurer. Section 9 provides that, "immediately upon the election of the board of education, * * the present board having control of said schools, consisting of a director, clerk, and treasurer shall cease to act as such, and the sole control, supervision and management of said schools shall be vested in the board, provided by this act, and the said director, clerk and treasurer shall, upon the order of the said board * * surrender to the person, or persons, duly authorized by said board to receive the same, all moneys, books. papers or other property belonging to or owned by the present school district No. 1 of " said city.

*Jackson & Halsey,* for appellant, argued that the intention of the act of 1873, was to supersede school district No. 1 by some other corporation; that there can not be two distinct corporations at the same time within the same territory, exercising the same powers and privileges. Dillon on Mun. Corp., § 125. No officers have power to act since the organization of the board, other than the board. No power exists to raise money to support schools except in the common council. The city was the corporation standing behind the board, and the board was not a necessary party nor the proper defendant. *Klaus v. Green Bay,* 34 Wis., 623. The effect of the act of 1873 was to make a new and larger district under a new name which must be used in all future actions. Dillon on Mun. Corp., §§ 116, 123; *Briggs v. School Dist.,* 21 Wis., 348; *Young v. C. & N. W. R'y Co.,* 28 id., 171; *Fort Wayne v. Jackson,* 7 Black (Ind.); 36.

The fact that the city embraces more territory than the old district does not alter the case. It is identical with the cases where the legislature annexes contiguous territory to a city. The territory thus added will be subject to taxation to discharge preexisting municipal indebtedness. Dillon on Mun. Corp., § 126, and cases there cited. The plaintiff was entitled to recover unless the defendant, upon whom the burden of proof lies, shows by way of defense that the plaintiff was actually engaged in, or was offered other profitable employment. *Barber v. Ins. Co.*, 24 Wis., 630 ; *Costigan v. R. R. Co.*, 2 Denio, 609.

*G. L. Park*, for respondent, argued that there had been no abolition of school district No. 1 by the act of 1873, but merely a new school board created. The change of name, of boundaries, of mode of government, does not dissolve a corporation. Dillon on Mun. Corp., §§ 52, 110, 115; *Only v. Harvey*, 50 Ill., 453. Sec. 9 of the act of 1873 shows that the sole object to be attained was to transfer the control of "*said* schools," i. e., the schools of district No. 1, to the board. District No. 1 is still in existence, and the action should have been brought against it.

RYAN, C. J. We have looked into the charter of the city, the respondent, ch. 267 of 1858 ; and, as far as we can judge, upon its passage, common schools in the city remained under the town system. The connection between the town and that part of its territory constituting the city, is dissolved for all town purposes (charter, ch. 9, sec. 20); but the authority of the town superintendent of schools within the city is expressly continued (id., sec. 19). The city indeed takes power to levy school taxes (id., ch. 7, sec. 8); apparently because the town lost the power. Beyond these provisions, we find nothing in the charter relating to schools. If there be anything further, or if there be other legislation on the subject, before the act of 1873, we have not been referred to it.

And so it appears that school district No. 1, comprising a

part of the city, remained in operation, outside of the city charter, under the general school system, until the act of 1873 was passed. We regret that the case does not give us clearer light on the subject; but we can see our way to no other conclusion.

Ch. 167 of 1873 amends the city charter by providing that the board then having control of schools in the city should cease to act, and creating a new board of education for the city, as part of the machinery of the city government, in which the act vests sole control, supervision and management of schools in the city, under the general supervision of the county superintendent, and to which the old board shall surrender all effects belonging to school district No. 1.

It was argued here, and we are told that it was so held in the court below, that school district No. 1 was not abolished by this legislation, but still continues to exist. We cannot think so.

It should be borne in mind that school districts are not formally chartered corporations, but are to be regarded rather as *quasi* corporations, variable in organization and extent, and having corporate existence by force only of their public functions. *School Dist. v. Macloon*, 4 Wis., 79. In *State v. Wolfrom*, 25 Wis., 468, the new village charter included a part only of an existing school district, and *therefore* the court holds that the charter did not abolish the school district, dealing with it expressly as a question of legislative intention. The reasoning of that case, applied to this, goes to show a legislative intention to abolish district No. 1. And independently of authority we could very easily come to the conclusion that the corporate existence of a school district ceases with its functional existence. But, even in the case of chartered municipal corporations, the law seems to be well settled that such legislation as this would operate to extinguish the old corporation. "A corporation may be created in any place where there is not an existing corporation for municipal government, even where there has formerly been one, if it be now dissolved. But there cannot,

at the same time, be two corporations in the same place, having the same or similar powers, privileges and jurisdiction." Willcock, 27, cited and approved in *City of Patterson v. Society, etc.,* 4 Zab., 385. " It has been contended that the old corporation was not dissolved, because some of the natural members were in existence; and that there cannot be two corporations, at one time, in the same place, with coextensive powers. I admit the latter part of the position to be true, namely, that there cannot be two such effective corporations in the same place; for, instead of good order, that would only be productive of anarchy. But I deny the former position; for I say, when the old corporation was reduced to such a state as to be incapable of continuing its existence, and of doing any corporate act, it was extinct as a body corporate." ASHHURST, J., in *King v. Pasmore*, 3 Term, 199.

Here, for all purposes, the city took the place of the old school district, was vested with all its property, powers and duties. And the latter lost its corporate being with its functions. And we think that this was plainly the intention of the legislature; and that the declaration that the school district shall cease to act, is equivalent to a declaration that it shall cease to be.

It is therefore very certain that the appellant could not have sued the school district which employed him. And his action is well brought against its successor. The city is, *pro hac vice,* the old school district enlarged, under a new name. And, as the appellant's counsel contends, the new district abolished the old *cum onere. School Dist. v. Macloon, supra; State v. Wolfrom, supra; Briggs v. School Dist.,* 21 Wis., 348; *Collins v. R. R. Co.,* 14 id., 492.

This is understood to be the only point on which the nonsuit turned below, and it is the only ground on which it was supported in this court. We shall therefore set aside the nonsuit, without considering any other question or indicating any opinion on the measure of the appellant's right of recovery.

*By the Court.* — The judgment of the court below is reversed, and the cause remanded for a new trial.