[Civ. No. 25655.   Second Dist., Div. One.   Apr. 25, 1962.]

THE PEOPLE ex rel. CITY OF DOWNEY, Plaintiff and Appellant, v. DOWNEY COUNTY WATER DISTRICT, Defendant and Respondent.

Stanley Mosk, Attorney General, Bonnie Lee Martin, Deputy Attorney General, Royal M. Sorensen, City Attorney (Downey), and Burke, Williams & Sorensen for Plaintiff and Appellant.

Alan M. Firestone, City Attorney (San Diego), and Graham K. Fleming, Deputy City Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Burris & Lagerlof, C. F. Culver and H. Jess Senecal, for Defendant and Respondent.

Morris Hyman, C. F. Culver, Minasian & Minasian, P. J. Minasian, Ralph G. Helm, Rutan, Lindsay, Dahl, Smedegaard, Howell & Tucker, H. Rodger Howell, Price, Postel & Parma, Robert M. Jones, Redwine & Sherrill, Earl Redwine, Rimel & Johnston, Jack J. Rimel, Carlson, Collins, Gordon & Bold, Frederick Bold, Jr., Surr & Hellyer, James R. Edwards, Clifford H. Clark, J. Clifford Argue, Smith, Netsley & Stevenson, Lance D. Smith, Frank P. Doherty, Frank E. Jenney, Wadsworth, Fraser & McClung, Robert H. Dahl, Schofield, Hanson, Bridgett, Marcus & Jenkins, Thomas M. Jenkins, Stanley C. Lagerlof, Powell & Martinson, Don Martinson, Kirkbridge, Wilson, Harzfeld & Wallace, John H. Holtom, Gray, Cary, Ames & Frye, John M. Cranston, Morgan W. Lowery, Kaminar, Sorbo, Andreen, Thorn & Gallagher and Robert Thorn as Amici Curiae on behalf of Defendant and Respondent.

LILLIE, J.—This is a quo warranto proceeding challenging the existence of the Downey County Water District. The People claim that by inclusion of the entire area of the district

within the corporate boundaries of the City of Downey through annexation proceedings of December 6, 1957, the district, by operation of law was merged with the city and completely dissolved. Principally on stipulated facts the trial court concluded that the district is lawfully and validly in existence; the People appeal from the judgment.

In 1929 the Downey County Water District was incorporated under the County Water District Law (Wat. Code, div. 12), since then it has operated and maintained a water production and distribution system serving water for domestic and industrial uses. On December 17, 1956, the City of Downey was incorporated; on October 21, 1957, it annexed approximately 99 per cent of the area of the district and on December 6, 1957, the remaining 1 per cent. Thus, on December 6, 1957, the entire territory of the district was contained within the corporate boundaries of the city. At this time the district had a bonded indebtedness in excess of $75,000 evidenced by noncallable general obligation bonds held by private owners within the district. On November 12, 1958, the city council adopted a resolution declaring the merger of the district with the city. Thereafter, on May 19, 1959, the district annexed certain territory located outside the boundaries of the city; thus, since that date not all of the district has been included within the city boundaries.

The main issue is threefold—by virtue of the inclusion of the entire territory of the district by the city through annexation, was a merger effected and the district dissolved; if so, when did the merger occur, and at that time, did the assets and liabilities of the district pass to the city. Relying primarily upon *Petition of Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal. 453 [111 P. 368], appellant's position is that, in the absence of specific legislation to the effect that under such circumstances a county water district continues its separate existence, on December 6, 1957, when *all* of the territory of the district was annexed by and included within the city, the district automatically merged with the city and was completely dissolved, and all of its assets, properties, obligations and liabilities were transferred to the city.

We know of no reported case involving the complete inclusion of a water district within a city by annexation of the city, but the general rule in connection with other special districts is that when the territory of a public corporation of

limited powers is annexed to and entirely contained within the boundaries of a municipal corporation which has power to exercise the same functions as well as others essential to municipal government, the public corporation of limited powers, in the absence of specific legislative enactment revealing an intention that it should continue its existence, of necessity automatically merges with the municipal corporation and ceases to exist. (*Petition of Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal. 453 [111 P. 368]; *People* ex rel. *Cuff* v. *City of Oakland*, 123 Cal. 598 [56 P. 445]; *Pixley* v. *Saunders*, 168 Cal. 152 [141 P. 815]; *City of Escalon* v. *Escalon Sanitary Dist.*, 179 Cal.App.2d 475 [3 Cal.Rptr. 889]; *City of Roanoke* v. *Fisher*, 193 Va. 651 [70 S.E.2d 274].) This doctrine of merger by operation of law is predicated on the theory of duplication of functions—otherwise two distinct local governmental bodies claiming to exercise the same authority, powers and franchises simultaneously over the same territory would "produce intolerable confusion, if not constant conflict." (*Petition of Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal. 453, 469 [111 P. 368]; *City of Escalon* v. *Escalon Sanitary Dist.*, 179 Cal.App.2d 475 [3 Cal.Rptr. 889]; *City of San Diego* v. *Otay Municipal Water Dist.*, 200 Cal.App.2d 672 [19 Cal.Rptr. 595].) Thus, for the rule of merger to apply herein, the Downey County Water District must constitute a public corporation of more limited powers than the City of Downey, and there must be an absence of legislative intent in the act creating the district that the district shall continue its existence as a separate entity after its territory has become completely embraced within the boundaries of a municipal corporation.

Respondent argues that in any event, the doctrine of merger cannot apply to proprietary functions, and that the conflict of power upon which the rule is based will not here occur since the City of Downey is free not to exercise its power to supply water and has not elected to do so. ■ We find nothing in the rule, or the considerations upon which it is based, that requires an actual existing conflict or an "unavoidable" or "inevitable" clash of authority. That the doctrine of merger contemplates a potential conflict is borne out by the authorities. Dictum in *People* ex rel. *Cuff* v. *City of Oakland*, 123 Cal. 598 [56 P. 445], later cited and approved in *Pixley* v. *Saunders*, 168 Cal. 152 [141 P. 815], and *Petition of Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal.

453 [111 P. 368], declared: "But if the statute permits territory embraced in or covered by a sanitary district to be annexed to a city—a municipal corporation of a higher class and *capable* (emphasis added) of exercising the same functions as well as others essential to municipal government—such statute contemplates, *ex necessitate rei*, a cession of the powers of the inferior corporation to the greater, and a consequent dissolution of the former as a result of the annexation" (pp. 600-601); and the court in *Petition of Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal. 453 [111 P. 368], held ". . . where a public corporation having powers more limited than those of a municipal corporation is annexed to a city which *possesses* all of the powers of the corporation which has been annexed to it and others in addition," a merger is effected. (P. 457.) (Emphasis added.) And the terms "probability of a potential conflict" are employed in discussing the exercise of dual functions by a municipal water district and a city in the recent case of *City of San Diego* v. *Otay Municipal Water Dist.*, 200 Cal.App.2d 672 [19 Cal.Rptr. 595]. Nothing in the cases supporting the rule of merger requires that the two governmental entities must be exercising the same powers at the same time over the same territory before a merger takes place, as long as the municipal corporation is "capable" of exercising or "possesses" all of the powers of the public corporation which has been annexed or there is a "probability of potential conflict" between them; sufficient then is a potential conflict, one which would arise should the city engage in the water business and it is this capability of conflict that is the basis of the doctrine.

█ █ While a municipality acts in a proprietary capacity in supplying water (*City of South Pasadena* v. *Pasadena Land etc. Co.*, 152 Cal. 579 [93 P. 490]), the cases supporting the rule of merger fail to make any distinction between governmental and proprietary functions or impose any such limitation upon its application. Moreover, there can be just as much capability of, or potential, conflict involved in the exercise of a proprietary function as in the exercise of a governmental one. In fact an actual conflict is imminent. On November 12, 1958, the city council adopted a resolution declaring a merger of the district with the city, and demanded the property and assets, operation, control and maintenance, and facilities and appurtenances of the former. The district's refusal resulted in the within action. In the *Fruitvale* case,

*supra,* the city had a right to construct, establish and maintain sewers but was not compelled to do so (Gov. Code, § 38900) and had not done so; and while this was a governmental function, and the power of a city to provide water is of a proprietary nature, nevertheless the practicalities of the two situations appear to be the same. ■ The city has the right or the power to supply water to its inhabitants (Cal. Const., art. XI, § 19; *City of South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579, 593 [93 P. 490]) and to operate a water system (*City of North Sacramento* v. *Citizens Utilities Co.,* 192 Cal.App.2d 482 [13 Cal.App. 538]); but as in the *Fruitvale* case, *supra,* there is no duty on the part of the city to engage in the water business. ■ To discredit the applicability of the *Fruitvale* decision (158 Cal. 453), appellant cites authority to the effect that a city has an obligation to provide sanitary facilities as distinguished from the right to do so; but a reading of the case cited (*People* v. *City of Los Angeles,* 83 Cal.App.2d 627 [189 P.2d 489]) makes it clear that while a city is obligated to dispose of sewage accumulating within its boundaries, the means or facilities it uses for sewage disposal are discretionary. We see no distinction between the *Fruitvale* case and the one at bar on this issue—in each, the city is capable of and possesses the power to furnish the service, but has no duty or obligation to do so; in each, the district exercised that function; and in each, the city had not elected to do so.

■ Constitutional provisions, pertinent legislative enactments and the authorities in this state leave no doubt that the district is a public corporation of more limited powers than the city and that the latter has the power to exercise and is capable of exercising the same functions as well as others essential to local municipal government. Both parties have enumerated various code sections to support the position that one entity has more extensive powers than the other in the area of furnishing water, but our concern is with the broad basic general powers relating not only to municipal government but to the field of water supply inherent in a municipal corporation as compared with the limited special purpose powers inherent in the district. And this appears to have been the view of the court in *Petition of Sanitary Board of East Fruitvale Sanitary Dist.,* 158 Cal. 453 [111 P. 368], and *City of Escalon* v. *Escalon Sanitary Dist.,* 179 Cal.App.2d 475 [3 Cal.Rptr. 889].

County water districts, designed for a special purpose, are created under the general laws of this state (County Water District Law (Wat. Code, div. 12)). The powers of special districts are special purpose powers limited solely to those conferred by the Legislature in the line of the object of their creation. (*In re Orosi Public Utility Dist.*, 196 Cal. 43, 53 [235 P. 1004].) The powers of a county water district are specifically defined in certain provisions of the Water Code; the district's primary purpose is to carry out all of the necessary functions and operations of supplying sufficient water to inhabitants within its boundaries, and the Water Code gives it the power to do so (§ 31020). In succeeding sections numerous other powers are conferred upon it to effectuate its special purpose; but nowhere therein or in any other legislative enactment, has a district been given powers in matters of police protection, traffic, zoning, health, recreation, regulation of business, transportation, the police power or other functions essential to municipal government.

Our courts have defined a county water district as a governmental agency (*Coachella Valley County Water Dist.* v. *Stevens*, 206 Cal. 400 [274 P. 538]) exercising, to a limited extent, powers of government vested in it by the legislative enactment from which it draws its right to exist and power of operation (*Laguna Beach County Water Dist.* v. *County of Orange*, 30 Cal.App.2d 740 [87 P.2d 46]); and because it is organized under a special legislative enactment and "lacks the broad legislative, executive and judicial powers of a municipal corporation," it is not a municipal corporation as that term is technically used in the law of this state. (*Supra*, p. 745.) In referring to county water districts (as well as municipal utility districts) the court in *Galt County Water Dist.* v. *Evans*, 10 Cal.App.2d 116 [51 P.2d 202], referred to them as "public corporations inferior in power and scope to a municipal corporation" (p. 119); and over a water district—its organization and change of boundaries—the Legislature has plenary control. (*Sacramento Mun. Util. Dist.* v. *All Parties*, 6 Cal.2d 197 [57 P.2d 506].) A water district has only such powers as are given to it by statute and it is an entity, the powers and functions of which are derived entirely from the Legislature.

On the other hand, in addition to the numerous functions essential to municipal government exercised under various constitutional and legislative provisions, the source of the

city's power in the field of water supply is the Constitution. The broad basic power of the city to "establish and operate public works for supplying its inhabitants with . . . water" is granted by article XI, section 19, California Constitution. To implement this power to directly or indirectly carry out all the necessary functions of supplying water within its boundaries, are numerous legislative provisions and its police power under article XI, section 11, California Constitution. Even in the limited field of water supply the city appears to have broader powers than a county water district. In this connection appellant has pointed up certain limitations on the powers of a district not applicable to those of a city; these limitations extending to a district's production, distribution and use of water, place a city in a preferred position relative to water rights. Moreover, its priority and superior position to meet the water needs of its inhabitants and to protect their rights in the water supply are recognized and protected in numerous sections of the Water Code (*Rank* v. *Krug (United States)*, 142 F.Supp. 1; §§ 106, 106.5, 1005, 1007, 1203, 1460, 1462, 1464). To implement these powers are those found in sections 39792, 43225, 38730, 38742, Government Code and article XI, section 11, California Constitution.

Respondent and various other water districts filing amicus curiae briefs argue that the grant of power to county water districts by the Legislature vested certain rights in the people residing therein of which they would be wrongfully deprived upon merger, citing *Merchants' National Bank* v. *Escondido Irr. Dist.*, 144 Cal. 329 [77 P. 937]. This case involved an irrigation district, and the controlling statute in effect provided that an irrigation district holds its property in trust for the members of the district who are its beneficiaries; but because of the distinction between irrigation and other districts (*Ivanhoe Irr. Dist.* v. *All Parties*, 47 Cal.2d 597, 656 [306 P.2d 824]) and the fact that a county water district, as a public agency, holds "property by virtue of a trust in favor of the state" (*Laguna Beach County Water Dist.* v. *County of Orange*, 30 Cal.App.2d 740, 742 [87 P.2d 46]) the *Merchants' National Bank* case does not here control. ▇▇▇ Thus, while the primary right of the inhabitants of a district is to receive water, they have no vested rights in any particular property or assets of the district; but the city by virtue of the transfer of the trusteeship, upon merger, succeeds not only to all of the property and assets of the district held by it in

trust, but assumes the trustee's (district's) contractual obligations and liabilities, of which the main one is to supply water. While article XI, section 19, does not oblige the city to provide water service, when it annexes the entire territory of a county water district resulting in a merger, it then, succeeding to the rights of the trustee, must be burdened by the same obligations to perform the trust, and necessarily assumes the duty of the trustee to supply water. (*City of South Pasadena* v. *Pasadena Land etc. Co.*, 152 Cal. 579 [93 P. 490].) ▉ ▉ All water which has been dedicated to public use is imposed with a trust and the beneficiaries of that trust are the users of the waters; thus the transferee of a water company or a water system has the same duties and obligations as the transferor, and the inhabitants of the district have the right to receive water from the city to the same extent they formerly had (*Durant* v. *City of Beverly Hills,* 39 Cal.App.2d 133 [102 P.2d 759]; 35 Cal.Jur.2d 25); and the city must assume the duty to supply water without discrimination. (35 Cal.Jur.2d, Municipal Corporations, § 205, p. 25.) And inconsistent with respondent's contention that the people of the district have vested rights in its property is the provision of the County Water District Law that upon *statutory* dissolution (in which no other entity is involved to accept them), the assets of the district vest in the county board of supervisors. (Wat. Code, § 32911.)

▉ Whether merger occurs depends not alone on "the probability of a potential conflict between corporations possessing dual authority," but rests upon the intent of the Legislature in the premises. (*City of San Diego* v. *Otay Municipal Water Dist.,* 200 Cal.App.2d 672, 675-676 [19 Cal.Rptr. 595]; *Henshaw* v. *Foster,* 176 Cal. 507 [169 P. 82]; *La Mesa Homes Co.* v. *La Mesa etc. Irr. Dist.,* 173 Cal. 121 [159 P. 593]; *Pixley* v. *Saunders,* 168 Cal. 152 [141 P. 815].) The doctrine of implied legislative intent developed in *Petition of Sanitary Board of East Fruitvale Sanitary Dist.,* 158 Cal. 453 [111 P. 368], is based on a recognition of the Legislature's absolute power over public corporations established as agencies of the state for purposes of local government. (*In re Madera Irrigation Dist.,* 92 Cal. 296 [28 P. 272, 27 Am.St.Rep. 106, 14 L.R.A. 755].) The *Fruitvale* case declared that in the absence of a specific provision in the act creating the special district that it shall continue in existence upon being entirely included within the boundaries

of a municipal corporation, it must be implied that the Legislature intended that a merger occur and the district cease to exist. Therein the Sanitary District Act contained no provision concerning what happens to a sanitary district if it is entirely embraced within a municipal corporation; the court said: "In the absence of any constitutional restriction, the legislature has absolute power over the organization, the dissolution, the extent, the powers, and the liabilities of municipal and other public corporations established as agencies of the state for purposes of local government. (Citation.) What shall be the effect of the enlargement or diminution of the boundaries of such corporations, or of the consolidation of two into one, or of the annexation of the territory of one into another, is a question to be answered by a determination of the legislative intent. The cases above cited declare the result of such action under laws which do not show *affirmatively* an intent to continue the existence of two separate public corporations within the same territorial limits." (Emphasis added.) (P. 457.) ▮▮▮▮ This holding would seem to indicate that there must be more than mere silence on the part of the Legislature; that there must be some affirmative declaration in the law creating the district to the effect it shall continue in existence upon inclusion by a municipal corporation, before the court will conclude that the Legislature intended that the district shall remain a separate entity under such circumstances.

While *Galt County Water Dist.* v. *Evans,* 10 Cal.App.2d 116 [51 P.2d 202], involved the annexation of a county water district by a municipal utility district, and a specific provision in the County Water District Law protecting the "legal existence" of the water district upon such inclusion, precluded the applicability of the rule of the *Fruitvale* case, the court nevertheless at length discussed it and, referring to the plenary power of the Legislature over the organization, dissolution, extent, boundaries, powers and liabilities of special districts, recognized the effect of the *Fruitvale* decision in a proper situation, and implied that in the absence of an expression of legislative intent, a merger would there have occurred. "We may fairly assume that the legislature, having in mind a situation similar to that discussed in *In re Sanitary Board of East Fruitvale Sanitary Dist., supra,* deliberately proposed to correct the condition there pointed out and enacted the amendment referred to and has accordingly exer-

cised its power and expressed its legislative intent.'' (P. 119.) The *Galt* case is of more than passing interest here for while the Legislature sought to remedy the effect of the *Fruitvale* decision by thereafter expressly providing a district shall continue its legal existence when included within a *municipal utility district* (*Galt County Water Dist.* v. *Evans,* 10 Cal. App.2d 116 [51 P.2d 202], Wat. Code, § 31181), it has enacted no provision to protect the existence of a county water district upon its complete inclusion within the boundaries of a municipality. In line with the reasoning in the *Galt* case, *supra,* it may be fairly assumed that the Legislature, having in mind the *Fruitvale* decision (*McColgan* v. *Jones, Hubbard etc. Inc.,* 11 Cal.2d 243, 247 [78 P.2d 1010]; *Buckley* v. *Chadwick,* 45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242]) and having specifically protected the legal entity of a district upon inclusion by a municipal utility district and having made no such provision upon its inclusion by a municipal corporation, had no intention of changing the effect of the *Fruitvale* decision in the latter situation. ▆▆▆ The Legislature having specifically provided one exception to the general rule, it cannot be presumed that any other was intended. (*Collins* v. *City & County of San Francisco,* 112 Cal.App.2d 719, 731 [247 P.2d 362].) The same may be said of sections 30200 et seq., Water Code, which provide that a county water district may be formed even though it includes within it all or portions of one or more cities. ▆▆▆ But there is nothing in sections 30200 and 30203, or the County District Water Law or any other legislative enactment that constitutes either an expression of the Legislature that a merger should not occur when a city completely embraces within its corporate boundaries the territory of the district, or an inference thereof. Similar provisions in the Sanitary District Act permitting sanitary districts to be formed to include cities within their boundaries, did not preclude merger in the *Fruitvale* case; and the act involved in the *Escalon* case, *supra,* anticipated the formation of a district which would include a part or all of the municipality.

▆▆▆▆ Like the Sanitary District Act interpreted in the *Fruitvale* case, the County Water District Law has no specific provision concerning what happens to a district when it is entirely included within the boundaries of a municipal corporation. There is neither an affirmative declaration of legislative intent in the law precluding merger and dissolu-

tion of the district, nor inference of any kind that it was the intent of the Legislature that the district should continue in existence under such circumstances; in fact, considering the amendments subsequent to the *Fruitvale* case it appears that the Legislature in failing to declare itself on the subject intended to permit the rule therein to control. That the effect of the *Fruitvale* decision is still controlling, see *Dickson* v. *City of Carlsbad,* 119 Cal.App.2d 809 [260 P.2d 226]; while the facts therein are somewhat different, the court quoted from *Pixley* v. *Saunders,* 168 Cal. 152, 160 [141 P. 815], that a sanitary district " '. . . preserves its identity and retains its powers over the whole territory, *except in the event of its complete absorption* by a municipality.' " (Emphasis added.) The *Escalon* case, *supra,* reaffirms the doctrine of merger in the *Fruitvale* case by declaring that the question of the effect of the incorporation of the City of Escalon "has been determined by such cases as *In the Matter of the Petition of Sanitary Board of East Fruitvale District,* 158 Cal. 453 [111 P. 368]; *Pixley* v. *Saunders,* 168 Cal. 152, 160 [141 P. 815]; and *Dickson* v. *City of Carlsbad,* 119 Cal.App.2d 809 [260 P.2d 226]" (179 Cal.App.2d 475, 478), and holding that a departure from the *Fruitvale* rule is justified only where the Legislature has affirmatively stated that merger shall not occur. And in *City of San Diego* v. *Otay Municipal Water Dist.,* 200 Cal.App.2d 672 [19 Cal.Rptr. 595], while involving a city and a municipal water district, the court recognized the problem of duplication of functions in connection with annexation and the legislative intent to avoid it.

In consideration of the foregoing we find no merit in respondent's contention that the statutory procedure for dissolution of a water district, found in sections 32850 through 32958, Water Code, precludes automatic dissolution under the rule of merger. The court in *City of Escalon* v. *Escalon Sanitary Dist.,* 179 Cal.App.2d 475 [3 Cal.Rptr. 889], rejected a similar contention that the statutory procedure set forth in the Health and Safety Code was the only way of dissolving a sanitary district and precluded dissolution by operation of law. In *Petition of Sanitary Board of East Fruitvale Sanitary Dist.,* 158 Cal. 453 [111 P. 368], the court, in holding an automatic dissolution took place, found the procedure in the statute for dissolution of the district by action of the electors within the district to be merely an alternative method. And contrary to respondent's contention, *Henshaw* v. *Foster,* 176

Cal. 507 [169 P. 82], is not authority for the claim that the Legislature did not here intend a merger. The *Henshaw* case involved a petition for the formation of a municipal water district which would include within its proposed boundaries the entire area of three cities; it did not, as here, involve the issue of the inclusion of a district of limited powers within a municipality. But it did recognize that special districts are subject to the plenary power of the Legislature and that right to form such a district is a question of legislative intent even though it held that the *Fruitvale* case did not apply because "(i)n the statute before us the legislative intent is declared in plain language." (P. 510.) The Act specifically provided that any district formed thereunder might include municipalities. In the Municipal Water District Act the Legislature clearly expressed its intention that a district could be contained within one city but there is neither specific provision nor inference in the County Water District Law that one city alone can form a county water district.

There is no dispute that on December 6, 1957, the entire territory of the Downey County Water District was included within the boundaries of the City of Downey by annexation. On that date, a merger of the district with the city having occurred, the district ceased to exist. The effect of merger is declared at page 460 in the *Fruitvale* case: "It must accordingly be held that upon the completion of the annexation the powers of the sanitary district and of the sanitary district board ceased . . ." and again at page 461: "The judgment is reversed with directions to the trial court to enter a judgment declaring that the *East Fruitvale Sanitary District* has been dissolved by the annexation proceedings and that it has not nor has its sanitary board any power to issue the bonds in question." From this it is apparent that the effect of annexation is automatic—that merger and dissolution occurs by operation of law *at the time* of the inclusion of the entire area of the district; as conceded by respondent, "(T)his merger occurs as a matter of law whenever certain facts and certain relationships exist with respect to two public entities. The action of the doctrine is *automatic* and does not depend, and by its very nature cannot depend, upon any direct act or upon the consent or violation of either entity." (R.B., p. 10.) We do not read *Dickson* v. *City of Carlsbad*, 119 Cal.App.2d 809 [260 P.2d 226], to the contrary. While the trial court judgment indicated that merger would

802

take place when certain pending matters were completed, it is clear that the affirmance of the judgment did not change the rule in the *Fruitvale* decision or stand for the proposition that merger takes place at a future event; the appellate court, referring to the judgment, said that although the time of dissolution of the district and its merger within the city was "not technically accurate," the meaning and the effect of the judgment was nevertheless clear and no prejudice appeared. (P. 814.) ▉▉▉▉ We conclude that the merger and dissolution of the district occurred on the date (December 6, 1957) its entire territory was, by annexation, included within the boundaries of the City of Downey.

Respondent maintains that the crucial time for determining whether merger occurred is June 10, 1960, the date of filing the quo warranto proceeding. It argues that the status of the district must be determined from the circumstances existing at that time and the district, having on May 19, 1959, annexed certain territory located outside of the city, was on June 10, 1960, no longer entirely contained within the city boundaries.

▉▉▉▉ Under the rule of the *Fruitvale* case, on December 6, 1957, a merger occurred by operation of law, and with the dissolution of the district its authority, privileges, franchise and powers were extinguished; "upon the completion of the annexation the powers of the sanitary district and of the sanitary district board ceased." (P. 460.) Thus, inasmuch as the district and its powers have been nonexistent since December 6, 1957, its subsequent acts were void for lack of jurisdiction; its act of annexation on May 19, 1959, was invalid and of no effect and no legal rights may be predicated thereon. (*City of San Pablo* v. *City of Richmond,* 148 Cal.App.2d 358 [306 P.2d 949].) Void from its inception, neither the within action nor any subsequent act of the city or the district vitalized the purported annexation proceeding of the district. (*People* v. *Town of Corte Madera,* 115 Cal.App.2d 32 [251 P.2d 988].) ▉▉▉▉ Moreover, a judgment issued in a quo warranto proceeding does not change the status existing at the time the district sought to annex territory outside the city. As said in *People* v. *City of Westmoreland,* 135 Cal.App. 517 [27 P.2d 394] : "If, at the time of its (city's) alleged incorporation, it was not legally incorporated, its legal status subsequent to that time has not been changed by the judgment. . . ." (P. 521.) The validity of the act of annexation

must be determined as of the date it purportedly took place—May 19, 1959. At that time there was no legally existing district, thus it had no jurisdiction to act in the matter of annexation and there was no entity to perform the necessary acts to effect an annexation. The purported annexation could not change the status of the merger and dissolution of the district which took place at the time of the district's complete inclusion within the city; the same being invalid, it could have no effect of extending the boundaries of the district beyond those of the city.

The rule of merger, conceded by respondent to operate automatically and not dependent on any act of either entity, in part disposes of its suggestion that the city is estopped to advocate a merger because it thereafter contracted with the district for water and the city council adopted a resolution declaring that a merger had been effected. But it is the People of the State of California who are the party plaintiff in this proceeding (*People* v. *California Protective Corp.*, 76 Cal.App. 354 [244 P. 1089]), not the City of Downey, and the latter's acts, even if they could constitute an estoppel against it, cannot preclude the People from seeking to enforce their will. A quo warranto proceeding brought in the name of the People is not to redress the wrongs of the relator nor to enforce its rights; it is in no legal sense under the relator's control. (*People* ex rel. *Budd* v. *Holden*, 28 Cal. 123.) Thus we conclude that the rule that "the People are not estopped by the acts or conduct of such a relator in another proceeding between different parties" (41 Cal.Jur.2d 628; *People* v. *Bass*, 15 Cal.App. 62 [113 P. 695]; *People* v. *Lowden*, 2 Cal. Unrep. 537 [8 P. 66]) should apply herein, inasmuch as the doctrine of estoppel is based upon the acts of the parties and operates only against the party performing them, and an estoppel invoked against the People of the State of California under the instant circumstances "would operate to defeat the effective operation of a policy adopted to protect the public." (*Lynn* v. *Duckel*, 46 Cal.2d 845 [299 P.2d 236].) The policy involved herein is declared in *Petition of Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal. 453 [111 P. 368]: "To hold that a sanitary district retains its existence and powers notwithstanding the annexation of its territory to the city would lead to the existence within the territory annexed of two distinct local governmental bodies claiming to exercise the same powers

over the same territory. Such a condition would produce intolerable confusion, if not constant conflict.'' (P. 459.)

At this point considerable argument is advanced by respondent based upon constitutional limitations it claims preclude merger. In the main its position is that the application of the doctrine would impair the obligation of the contract represented by the bonds issued by the district; it claims that the bond holders would be deprived of any source of payment. We find no merit in this argument, for under the merger the city would not only succeed to all of the property and assets of the extinguished district but would inherit all of its liabilities including the fundamental obligation of the bonded indebtedness (*Town of Mount Pleasant* v. *Beckwith*, 100 U.S. 514 [25 L.Ed. 699] ; *City of Roanoke* v. *Fisher*, 193 Va. 651 [70 S.E.2d 274] ) ; the city would be obliged to assume the indebtedness and there is no limitation on its power to do so which could result in an impairment of the bondholders' contract; and the city has the same powers with respect to taxation to protect the bondholders as the district.

While the primary right of the people of the district to receive water is necessarily assumed by the municipality which absorbed the district (*City of South Pasadena* v. *Pasadena Land etc. Co.*, 152 Cal. 579 [93 P. 490]) and the physical function of supplying water will continue under its authority, upon annexation the city also succeeds to the property and assets of the district and, having accepted the benefits of the merger, the city also acquires its liabilities and obligations. '' 'The general rule as to disposition of property upon the annexation of a portion of one public corporation to another public corporation is that the property lying in the annexed territory belongs wholly to the corporation to which it is annexed and the annexed territory is freed from all obligation of the debts of the corporation to which it formerly belonged' '' (*Pixley* v. *Saunders*, 168 Cal. 152, 158 [141 P. 815] ; *Wilson* v. *Board of Trustees of Sanitary Dist.*, 133 Ill. 443 [27 N.E. 203, 207] ) ; and ''the subsisting corporation will be . . . answerable for all the liabilities.'' (*State* ex rel. *Consolidated School Dist.* v. *Smith*, 343 Mo. 288 [121 S.W.2d 160, 162] ; *Town of Mount Pleasant* v. *Beckwith*, 100 U.S. 514 [25 L.Ed. 699].) ''. . . where one municipal corporation is annexed to another the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished and its property, powers and

duties are vested in the corporation of which it has become a part. (28 Cyc. 217; *Mount Pleasant* v. *Beckwith,* 100 U.S. 514, 528 [25 L.Ed. 699]; *Adams* v. *Minneapolis,* 20 Minn. (484) 438; *People* v. *Supervisors,* 94 N.Y. 263; *Stroud* v. *Stevens Point,* 37 Wis. 367; *Schriber* v. *Langlade,* 66 Wis. 616 [29 N.W. 547, 554].) . . . the same result must follow *a fortiori* where a public corporation having powers more limited than those of a municipal corporation is annexed to a city. . . .'' (*Petition of Sanitary Board of East Fruitvale Sanitary Dist.,* 158 Cal. 453, 457 [111 P. 368].) Thus, upon merger the bondholders have the same security they had when the district was in existence, the city having succeeded to the same properties and assets; in other words, the properties of the district formerly subject to the indebtedness are still subject to it. Further the city acquires the fundamental obligation of the bonded indebtedness and is required to satisfy the same.

Respondent claims an impairment of the bondholders' contract by virtue of a limitation upon the city's right to tax. While it is true that section 43068, Government Code, impresses a maximum limit of $1.00 on each $100 of assessed valuation, exclusive of certain other taxes, any city having a validly-contracted bonded indebtedness is not prevented from levying and collecting taxes for its payment in addition to those therein authorized (§ 43070). Thus for the bonded indebtedness the city by law acquires from the district, the city may impose a tax over and above the $1.00 limitation. Nor does the city need a 2/3 vote of its voters to approve the assumption of the indebtedness under article XI, section 18, California Constitution, for this constitutional debt limit applies only to the voluntary obligations of a city, not to liabilities imposed on it by law. (*Federal Construction Co.* v. *Wold,* 30 Cal.App. 360 [158 P. 340]; *American Co.* v. *City of Lakeport,* 220 Cal. 548 [32 P.2d 622]; *Arthur* v. *City of Petaluma,* 27 Cal.App. 782 [151 P. 183].) See also out-of-state cases, *State* ex rel. *Consolidated School Dist.* v. *Smith,* 343 Mo. 288 [121 S.W.2d 160]; *Rephan* v. *City of Evansville,* 122 Ind.App. 271 [102 N.E.2d 514]; *True* v. *Davis,* 133 Ill. 522 [22 N.E. 410], to the effect that an assumption of bonded indebtedness of one public corporation merged with another does not increase the total indebtedness of the latter within the meaning of a constitutional limit.

In *City of Escalon* v. *Escalon Sanitary Dist.,* there were

outstanding bonds issued by the district. It is true that no constitutional question was raised relative to the merger because of the existence of this indebtedness, but if the contentions urged by appellant herein are valid, the court there could not have held as it did.

For the foregoing reasons the judgment is reversed, with directions to the trial court to enter a judgment declaring the dissolution of the Downey County Water District as of December 6, 1957.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 18, 1962, and respondent's petition for a hearing by the Supreme Court was denied June 20, 1962.